## FILKINS *v.* WHYLAND.

A writing in this form, "F. bought of W. one horse, $150. Received payment. W.," given upon the purchase of and payment for the horse, is a mere receipt, and not a contract or bill of sale, so as to exclude parol evidence of a warranty of soundness of the horse by the vendor.

APPEAL from the Supreme Court. Action for breach of warranty of the soundness of a horse. Upon the trial the

Filkins v. Whyland.

plaintiff gave evidence of the negotiation for the sale and purchase of the horse, tending to prove that the plaintiff warranted him to be sound, and that he proved unsound shortly after the delivery of him to the defendant. At the conclusion of the plaintiff's evidence, he produced, upon the call of the defendant's counsel, an instrument in writing, in these words:

"TROY, *Nov.* 19, '52.

" C. B. Filkins,

"Bo't of. C. Whyland,

"1 Horse, ...................................... $150 00

"Received payment.

" C. WHYLAND."

The plaintiff admitted that the defendant, upon the purchase of and payment for the horse, executed and delivered this writing to the defendant. After the writing had been put in evidence, the defendant moved for a nonsuit, on the ground that, the contract of sale being in writing, parol testimony to add to or vary it by proving a warranty of soundness was inadmissible. The plaintiff was nonsuited, and took an exception. The judgment for the defendant having been reversed by the Supreme Court at general term in the third district, and a new trial granted, the defendant appealed to this court, stipulating for judgment absolute against him if the order for a new trial should be affirmed.

*John K. Porter*, for the appellant.

*William A. Beach*, for the respondent.

WRIGHT, J. When a contract is consummated by writing, the presumption of law is that the written instrument contains the whole of it; and it will not be allowed to show oral representations or stipulations, preceding or accompanying the execution of the instrument, differing from or not inserted in it. The agreement to which the contractors bound themselves is to be ascertained exclusively by the writing.

These familiar principles were applied to and controlled the

decision of this case by the referee. Whether, in view of conceded facts, they were correctly applied, is now the single point in judgment.

The action was for a breach of warranty on the sale of a horse. The sale and delivery of the horse, the warranty and the breach thereof, were proved by parol; and, after the plaintiff rested, it was admitted that, upon purchasing and paying for the horse, the defendant executed and delivered to the plaintiff the writing set out in the case. A controlling inquiry, therefore, is as to the import and legal effect of that writing. If it is to be regarded and treated as the contract of the parties for the purchase and sale of the horse, reduced to writing, after verbal representations and stipulations, then, as it contains no warranty, it was inadmissible to add to or vary such contract by parol testimony tending to prove a warranty. On the contrary, if it be a mere receipt, acknowledging payment of the purchase-money, and not intended by the parties as an embodiment of the contract of sale, then the rule, that we can only look at the written instrument to ascertain the agreement, and that such writing cannot be varied or altered by parol proof, has no application. The defence can only prevail, if at all, on the assumption that the writing embodies the contract of bargain and sale, and that it was executed in consummation of such contract. If it be simply a receipt, and obviously not the written transfer of title to the horse, it would not be such a writing as to preclude proof by parol of the actual contract between the parties.

I think the paper is to be construed as a simple receipt, delivered and accepted as evidence of payment, and not the contract by which title to the horse was transferred. This construction will best accord with its terms, and the obvious intent of the parties in executing and accepting it. The paper cannot be read as a present agreement of sale. It contains no stipulations to sell or to buy, nor declares any present undertaking by either party. The vendor acknowledges payment, but he does not profess, by the writing, to sell. The vendee does not execute, but accepts it. It recites the fact of a past

sale. The only words of purchase or sale it contains are, "*C. B. Filkins bought of C. Whyland,*" and they are but the admission of a fact, and not an undertaking. Looking at the instrument alone, and without the aid of extrinsic evidence, they could not be connected at all with the purchase in question. The paper does not, by its own force, at the time of its execution, vend the horse, or assume to do so. It admits that a sale has been had, but does not effect one. No presumption necessarily arises from the language used in the writing that the parties intended it for the contract of sale. A merchant's bill of items of goods sold, made up and receipted in the same form, has never been regarded as the written contract of sale, so as to preclude the purchaser from showing representations upon such sale. Nor, from the mere fact that the writing was made upon the "purchase and payment" (as admitted), is it to be presumed to be the contract of the parties, reduced to writing. It will be conceded that it answers quite as well for a receipt as for a contract, and, indeed, better, for it does not contain a single contract stipulation. It is only upon the notion that it contains all the elements for framing a contract of sale, and was admitted to have been executed upon the "purchase and payment" of the horse in question, that it is to be assumed, if at all, to be the contract, reduced to writing, entered into by the parties. But the instrument, neither in terms nor by legal intendment, expresses anything more than is contained in the most ordinary receipt for the purchase-price of property sold. No receipt could be framed, applied to a particular sale, which would not express precisely the same thing. It recites a purchase, the amount of it, and the acknowledgment of payment. This is all there is in it. Had it read, "Received of C. B. F. $150 in payment of one horse bought by him of me," it would not have been doubted that it was a mere receipt, or acknowledgment of payment, and not the contract of purchase; yet, as it is, both in words and legal effect, it asserts the same thing. Its signification, or legal character, cannot depend upon the mere transposition of words. The defendant's counsel calls it a bill of sale, or written transfer, which it does not in terms

purport to be, and then cites authorities holding that bills of sale, or, properly, written contracts of sale, cannot be aided by parol. The writing may be more aptly named (what is obvious, from the instrument itself, was intended by the parties,) a receipt for the purchase-money, like that appended to an ordinary merchant's bill of items. It is, in form, just that, and nothing more. I imagine it would greatly disturb business usages, and perniciously interfere with the customs of society and the transactions of everyday life, to hold that a merchant's bill of items, made up and receipted in precisely the same form, is the written contract of sale, and the purchaser is concluded from showing representations outside of it. Certainly, there is no reason, from the language employed in this writing, to presume that it was intended as the contract of sale, and not as a receipt for the purchase-money upon a contract previously concluded; and, outside of the paper, it is entirely manifest, from the evidence, it was intended as an instrument of the latter character, and not the written contract itself by which the property was transferred.

I regard the paper, therefore, as a receipt of payment for an article of property sold. It is not the written evidence of the contract of sale, and made in consummation of such contract, but was designed and executed for another and independent purpose. This construction does no violence to its language or the intention of the parties as derived from the surrounding circumstances. The theory of the defendant is, that the paper is, in form and substance, a bill of sale, or written transfer, and, having been executed and delivered "upon the purchase and payment for the horse," it is to be presumed to be the "contract of sale," and the only one entered into by the parties. and reduced to writing. But this theory requires at least another assumption to sustain and uphold it, viz., that it was meant by the parties to be the written contract, and not an acknowledgment of payment. There is no such inference necessarily to be drawn from the writing itself, for if, in form and effect, it contains all the elements of a written transfer of property (which I think it does not), it is, unquestionably, in

form and substance, a receipt for property sold. Indeed, it better answers for the latter, as it fully carries out its purpose; whereas, that can hardly be named a written contract which contains no contract stipulations, but simply recites the fact of a past sale as preliminary to and explanatory of the admission of payment. I am not inclined to dispute the proposition that, when there is a formal written contract of sale, or a bill of sale, as it is sometimes called — the instrument by its own force vending the property and effecting a transfer of the title—which is executed by one party and accepted by the other, it is to be treated as the contract for the sale of the chattels named therein. There is no other inference to be drawn, and the writing conclusively manifests the intent of the parties. There can be no other purpose assigned to it. It contains stipulations of bargain and sale, express on the part of the vendor, and implied on that of the vendee from having accepted the property and the written transfer. It is a bill of sale of this character which Chief Justice SAVAGE presents as an example in *Van Ostrand* v. *Reed* (1 Wend., 424), of a consummation of a contract by writing, so as to preclude parol proof from varying it. But this is not the character and conclusive nature of the writing in the present case; and, if not, then the cases, cited by the defendant's counsel, of *Mumford* v. *McPherson* (1 John., 414), *Van Ostrand* v. *Reed* (1 Wend., 424), and *Niles* v. *Culver* (8 Barb., 205), have no application. In *Mumford* v. *McPherson* the bill of sale was of the moiety of a ship. It was a formal contract, and so intended. In *Van Ostrand* v. *Reed*, the writing was a sealed conveyance of the right to construct and vend a particular machine within a specified territory, and authorized the grantee to prosecute for infringements. In *Niles* v. *Culver*, the instrument was a contract to freight, full and complete in its terms. In each of these cases the court assumed, properly, that the contract had been reduced to writing by the parties, and confined them to it. The first is the only one of a bill of sale, and that was formal in its nature, and containing all the essentials of a contract for the purchase and transfer of property.

No one doubts that, when the contract of sale is reduced to writing, recourse can only be had to the written instrument to ascertain its extent. But the fact is always an open one, whether the parties have assumed to consummate the agreement by writing. In this case, had a formal contract of bargain and sale been shown to have been executed in writing, upon the purchase and transfer of the horse, there could have been no question that the parties intended that for the agreement of sale. But no such inference can be predicated of a paper, defective as a contract, but complete as an acknowledgment of payment. In *Allen* v. *Pink* (4 Mees. & Welsb., 140), a paper, which was delivered to the plaintiff when he paid the sum agreed upon for the price of a horse, viz., "Bought of G. Pink a horse, for the sum of £7 2s. 6d., G. Pink," was held not to be the contract of the parties for the sale of the horse. Lord ABINGER said: "The paper appears to have been meant as a memorandum of the transaction, or an informal receipt of the money, and not as containing the terms of the contract itself." And the plaintiff was allowed to give parol evidence of a verbal warranty. So, also, in *Huson* v. *Henderson* (1 Foster, 224), when the defendant had proved a bill of sale in which the horses were described, their ages stated, and the receipt of the price acknowledged, it was held that parol evidence was competent to prove a warranty of the soundness of the horses. The latter is a more marked case than the present. In the case under consideration, the written instrument was not a present, operative contract of sale, nor did it purport to be, but a formal, and not informal, receipt of the purchase-money.

The Supreme Court placed its decision of the case on the ground that the paper was, in terms and legal effect, nothing more than an acknowledgment that the plaintiff had paid the purchase-money upon the sale of a horse, and that it contained no agreement, stipulation or condition which characterizes a contract whose written terms cannot be varied by parol. Coinciding in this view, I am of the opinion that the order of the Supreme Court granting a new trial should be affirmed, and that judgment absolute should be rendered against the defendant.

ALLEN, J., also delivered an opinion for affirmance; and all the judges concurred.

Judgment absolute for plaintiff.