Van Buskirk *v.* Day et al.

## LAWRENCE VAN BUSKIRK
### *v.*
## CHARLES B. DAY *et al.*

1. PAROL EVIDENCE *and written instruments — fraud.* When a contract is reduced to writing, all prior and contemporaneous conversations in relation thereto, are merged in the written contract; yet, for the purpose of ascertaining whether the contract was procured through fraud and false representations, such conversations may be proven and considered by the jury.

2. INSTRUCTIONS — *if erroneous may be corrected by one that is good.* If one party procure an erroneous instruction to be given, and, at the instance of the opposite party another is given, qualifying the former, the two instructions should be considered together; and if, when so considered, the law is correctly laid down, the error in the first instruction should be regarded as corrected.

3. FALSE REPRESENTATIONS — *contracts.* Where subscriptions for a loan are being procured at the instance of the trustees of an enterprise which it is proposed to aid by such means, and a party executes his note to the president of the company for the amount of his subscription, it is very questionable whether it can be successfully interposed as a defense, in a suit upon the note, that the canvassers for the subscription induced the giving of the note by false representations in reference to the subject matter of the subscription. Unless such representations were prompted or authorized by the trustees or the payee of the note, they could not, properly, be given in evidence to defeat a recovery on the note.*

4. EQUITABLE ASSIGNEE BEFORE MATURITY — *how far protected.* An equitable assignee of a promissory note, who has paid value for it, will not be affected by any equities existing between the original parties to the note.

5. PROMISSORY NOTE — *what constitutes.* The following instrument is held to be a promissory note:

PEORIA, Nov. 11, 1859.
For value received I promise to pay to the order of Lewis Howell, President of the Board of Trustees of loan to the American Pottery Company, two hundred dollars, payable at the banking house of S. Pulsifer & Co., in Peoria, in installments, first installment, 10 per cent. at date; second installment, 5 per cent. on the first day of December, 1859, and the balance in installments of five per cent. on the first day of each month thereafter, until paid.
L. VAN BUSKIRK.

6. ASSIGNMENT OF NOTE — *who may make it.* In that note, Lewis Howell, although described as the "President of the Board of Trustees of loan to the American Pottery Company," held the legal title, and consequently could legally assign it.

---

\* See *Goodrich* v. *Reynolds, Wilder & Co.,* 31 Ill. 490.

APPEAL from the Circuit Court of Peoria County; the Hon. A. L. MERRIMAN, Judge, presiding.

Charles B. Day, and others, partners, instituted suit before a justice of the peace, in Peoria county, against Lawrence Van Buskirk, upon the following instrument of writing:

"$200. - PEORIA, Nov. 11, 1859.

" For value received I promise to pay to the order of Lewis Howell, president of the board of trustees of loan to the American Pottery Company, two hundred dollars, payable at the banking house of S. Pulsifer & Co., in Peoria, in installments. First installment, 10 per cent., at date. Second installment, 5 per cent., on the 1st day December, 1859, and the balance in installments of five per cent., on the first day of each month thereafter, until paid.

"L. VAN BUSKIRK."

On the back of which was this indorsement:

"I assign this to Day Bros. & Co., without recourse to me.

"L. HOWELL, Pre't of Board of Trustees."

There were also indorsed thereon, payments to the amount of seventy dollars.

The trial before the justice resulted in a judgment for the plaintiffs, from which the defendant appealed to the Circuit Court.

Upon the trial in the Circuit Court, the defendant objected to the introduction in evidence of the instrument sued upon, because the same was not assignable, and because it appeared from the face of the instrument that it was only an agreement to loan money; but the court overruled the objection and admitted the instrument in evidence, to which the defendant excepted.

A question is made as to the time of the assignment, whether before or after maturity; the defendant insisting it was not indorsed until after maturity, and, therefore, even if assignable, the instrument was subject to any defense which existed against the original holder. Lewis Howell testified to that point as follows: I cannot say whether the note sued on

was assigned before maturity or after; if the note became due May 1, 1861, then I think it was assigned after maturity; I think it was assigned after May 1, 1861; the Pottery Company gave nothing for it except what appears on the face of the note; they got it as they did about $50,000 more; I do not know what Day & Co. gave for the note.

A. Fenton testified that the note sued upon was assigned to the plaintiffs' in part pay for goods they furnished the company to pay hands for work done in erecting the pottery buildings; the goods were furnished long before the notes ·fell due, and upon the understanding that they were to be paid for in the notes of the subscribers to this loan, and the assignment was afterwards made in fulfillment of that agreement.

It appears the instrument sued upon was given upon a subscription to an enterprise which is set forth in the following paper, which was given in evidence by the defendant as the original subscription:

In consideration of the undertaking of Messrs. Decius W. Clark, Christoph. W. Fenton, Thomas W. Johnson, George W. Lascelle and Amai M. Johnson, commissioners for organizing the American Pottery Company, either by themselves, or in a corporate capacity, under a charter granted by the Legislature of the State of Illinois, entitled "An act to incorporate the American Pottery Company," approved February 19, 1859, to build a pottery establishment, and complete the same, in Peoria, according to plan originated by said commissioners and hereto attached, and the further promise that the said Fenton, or the said Clark, shall personally devote their best energies and skill to the successful upbuilding and operation of the same, and that they will not personally connect themselves with any other pottery manufactory, except that known as the "New England Pottery," to be used in preparing for it, saggers, &c.

We, the undersigned, agree to pay the said commissioners the sum set opposite our respective names, to be paid to Tobias S. Bradley, William Tobey, Lewis Howell, Eldridge G. Johnson and Sidney Pulsifer, as trustees, for the faithful appropria-

tion in building and operating the said pottery establishment; said sums of money to be loaned for the purposes aforesaid, for the term of ten years, and to bear interest at the rate of ten per cent., to be paid annually by the said company, and the said company or commissioners shall have the right of repaying said loan to the trustees herein named, or to the parties subscribing the same, in installments of ten per cent., or more, at any time within ten years that they may elect. The moneys hereby subscribed are to be paid to the trustees aforesaid, in installments as follows, to wit: Ten per cent. thereof as soon as the said commissioners shall accept the conditions of this agreement, and the balance thereof in monthly installments, as the same may be called for by said commissioners, or by the directors of the said American Pottery Company, provided that no more than five per cent. of said subscription shall be called for at one time, nor shall such calls be made oftener than once in thirty days (after the payment of the first installment of ten per cent., as above mentioned). The said installments are to be collected and paid to said commissioners or company without cost to them. The said commissioners, or the American Pottery Company to be organized by them, are (for the purpose of securing the repayment of the money hereby subscribed, with interest thereon, as hereinbefore expressed), to execute a mortgage to said trustees of their franchises and pottery property, to be fully designated and described in said mortgage, and are further to keep said property insured for the benefit of the subscribers hereto. All proper and needful papers for the carrying out of the objects of this subscription, and for the security of the subscribers hereto, are to be made and executed when the said commissioners shall accept the conditions of this agreement.

PEORIA, *Aug.* 22, 1859.

The defendant set up as a defense to the action, that he was induced to subscribe to the enterprise and execute the instrument sued upon, through the false and fraudulent representations of the canvassers for the subscription, in reference to the subject matter thereof, and evidence was introduced bearing upon that question. Whatever those representations were,

nothing appeared to show they were prompted or authorized by the trustees of the company, or the payee named in the instrument. But the defendant failed to show there were any false representations made, even by the canvassers, it appearing that the terms of the contract had been substantially complied with on the part of the company.

A question is made upon the fourth instruction given for the plaintiffs, which was as follows:

If the jury believe from the evidence, that the note sued on was given in pursuance of a subscription theretofore made, to loan $200 to the American Pottery Company, or to a board of trustees of such loan, for the use of said company, and that said subscription was made upon, and under, a written contract between certain parties, as commissioners for organizing said company, and the subscribers to such loan, of whom defendant was one, which contract purports to set forth the terms and conditions of, and inducements to, and consideration for such loan, such written contract is the sole and exclusive evidence of what said terms, conditions, consideration and inducements were, and no evidence of cotemporaneous statements, or representations made to induce defendant to become a subscriber to such loan, is to be taken into consideration by the jury, in making up their verdict.

The tenth instruction for the defendant was given, as expressed in the margin, as a qualification to the plaintiffs' fourth instruction, and was as follows:

"The jury are instructed that it is true, that all prior and contemporaneous conversations are merged in the contract, yet the jury may examine into such prior and contemporaneous conversations and representations, for the purpose of ascertaining whether the contract was procured through fraud and false representations. And if they find from the evidence, that the contract was so obtained, the contract would be void?"

The defendant, notwithstanding the giving of this qualifying instruction at his instance, excepted to the giving of the fourth instruction for the plaintiff.

The jury returned a verdict for the plaintiffs for $141.05.

The defendant moved for a new trial, which was denied, and a judgment entered upon the verdict. From that judgment the defendant took this appeal.

The questions arising upon the assignment of errors, are:

*First.* Whether conversations prior and contemporaneous with the execution of a contract in writing, although merged in the written instrument, may not be considered for the purpose of showing whether the contract was procured through false and fraudulent representations.

*Second.* Whether the error in an improper instruction may not be corrected by means of another instruction.

*Third.* How far any false or fraudulent representations made by the canvassers for the subscription without the privity or authority of the trustees or the payee of the instrument, would go to vitiate the contract induced thereby.

*Fourth.* Whether an equitable assignee of a promissory note, before maturity, will be protected against equities existing between the original parties.

*Fifth.* Whether the instrument sued upon is a promissory note; and herein, whether the payee, Howell, had authority to assign it.

Mr. M. WILLIAMSON, for the appellant.

Messrs. COOPER & Moss, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This suit was originally commenced before a justice of the peace of Peoria county, to recover a balance claimed to be due on the following note:

$200.                                      PEORIA, *Nov.* 11, 1859.

For value received, I promise to pay to the order of Lewis Howell, president of the board of trustees of loan to the American Pottery Company, two hundred dollars, payable at the banking house of S. Pulsifer & Co., in Peoria, in installments. First installment 10 per cent., at date; second installment 5 per cent., on the first day of December, 1859, and the balance in installments of five per cent., on the first day of each month thereafter, until paid.                L. VAN BUSKIRK.

34

The note was indorsed as follows: I assign this to Day, Bros. & Co., without recourse to me. L. Howell, prest. of board of trustees. There was a credit indorsed of seventy dollars.

A judgment was rendered for the plaintiffs, from which the defendant appealed to the Circuit Court, where, on a trial before a jury, a verdict was rendered for the plaintiffs for one hundred and forty one $\frac{0.5}{100}$ dollars, and judgment accordingly. The case is brought here by the defendant, by appeal. The principal point raised is upon the fourth instruction given for the plaintiffs:

That instruction is as follows:

If the jury believe, from the evidence, that the note sued on was given in pursuance of a subscription theretofore made, to loan $200 to the American Pottery Company, or to a board of trustees of such loan, for the use of said company, and that said subscription was made upon and under a written contract between certain parties, as commissioners for organizing said company, and the subscribers to such loan, of whom defendant was one, which contract purports to set forth the terms and conditions of, and inducements to, and consideration for such loan, such written contract is the sole and exclusive evidence of what said terms, conditions, consideration and inducements were, and no evidence of cotemporaneous statements or representations made to induce defendant to become a subscriber to such loan, is to be taken into consideration by the jury in making up their verdict.

It is objected by the appellant that, inasmuch as the issue before the court was fraud, the defendant was at liberty to go outside of the written contract, and show all the circumstances attending the transaction, and therefore it was error to inform the jury that the written contract furnished all the evidence for this consideration.

There is force in this, and so the Circuit Court thought, for, at the instance of the defendant, the tenth instruction was given expressly for the purpose, as stated on the margin, of modifying the fourth instruction.

The tenth instruction asked by the defendant is as follows :

The jury are instructed that it is true that all prior and contemporaneous conversations are merged in the contract, yet the jury may examine into such prior and contemporaneous conversations and representations for the purpose of ascertaining whether the contract was procured through fraud and false representations. And if they find from the evidence, that the contract was so obtained, the contract would be void.

Whatever error then may have been in the fourth instruction as given, it was corrected by the tenth, and no injury could have resulted to the defendant. Indeed the two in themselves are to be considered together, and when so considered are correct.

It is very questionable if the defense here set up was legitimate. The false representations should be brought home to the parties to the note. What statements the canvassers for subscriptions may have made to induce the defendant to execute this note, unless prompted or authorized by the trustees or the payee of the note, was not proper evidence to the jury to defeat a recovery on the note.

As to the suggestion, the note was assigned after maturity, and therefore open to any defense that may have existed to it while in the hands of the original payee, it is sufficient to say, the note was transferred on its execution, to the plaintiffs, who made advances on the credit of it, to the workmen engaged in carrying on the enterprise in which the defendant had embarked, and had in that way paid value for the note and became the owners thereof. They were the equitable assignees of the note before its maturity, and ought not to be affected by any equities existing between the original parties to the note. But if it was assigned after maturity no defense has been shown to the recovery.

It is objected by the appellant, that the note in question is not a promissory note, and therefore not assignable. He insists it is a promise merely to loan money.

The writing has all the essentials of a promissory note. It has a payor and payee, promises to pay a certain sum of

money at a certain time, in certain installments. It is made payable to the order of Lewis Howell, describing him as "president of the board of trustees," of loan to the American Pottery Company. Howell is the payee and had the legal title to the note, and consequently could legally assign it.

The jury by their verdict have negatived all idea of fraud in the transaction, and that the contract made by the commissioners with the appellant has been substantially complied with, and we see no ground to question the correctness of their finding. The appellees are meritorious parties, having paid value on the appellant's promise that he would pay the note according to its terms. There being no fraud or false representations established against the payees of this note, or against any person or party in privity with them, the judgment must be affirmed.

*Judgment affirmed.*