## KOOP and GRAEPEL *vs.* HANDY and others.

Upon a sale of goods through a broker, the following sale note was signed by the broker: "Sold Mr. G. H. K. for account of Messrs. H. & E. about twenty tons *divi divi*, at $45 cash per ton, to be put in bags and delivered as soon as possible." *Held* that the instrument was not so far complete as a contract, on its face, as to exclude parol evidence of a warranty.

A well established exception to the general doctrine which regards all anterior and contemporaneous stipulations and representations as merged in the written contract, exists where one party sues another, alleging as the *gravamen* some fraud of the latter, by which the former was induced to enter into the contract.

Where the *gravamen* of the complaint was fraud upon the sale of goods, by sample, through a broker; *Held* that parol evidence of the statements of the vendors to the broker, previous to the sale, respecting the quality of the bulk of the article as compared with the sample, was admissible; notwithstanding there was a memorandum of the sale, in writing, signed by the broker, which was silent as to the quality of the article sold.

THIS was an action upon a warranty, charging that the defendants sold and delivered to the plaintiffs a quantity of *divi divi* by sample, representing it to be "of as good quality as the sample," and further representing that the "defendants warranted it so to be," and averring "that the plaintiffs, believing such representations to be true, and relying upon the warranty of said defendants, purchased," &c.; and alleging that the article was in fact "of an almost worthless quality," and claiming the sum of $800 as damages. Upon the trial the plaintiffs called John L. Kahl, the broker through whom the purchase was made, and proved, and read in evidence, a written contract of sale, in the words and figures following:

"*New York, Dec.* 30, 1859.

Sold Mr. G. H. KOOP,

For account of Messrs. Handy & Everett, abt. 20 tons *divi divi*, at $45 cash per ton, to be put in bags and delivered as soon as possible.

JOHN L. KAHL, broker,
78 Pine st. near Pearl."

Koop *v*. Handy.

The plaintiffs' counsel then offered to prove by the witness: 1st. That the contract of sale was not all in writing; that the sale was a sale by sample; that by the contract of sale the defendants warranted the bulk of the *divi divi* to be equal to the sample shown plaintiffs; that the sample shown was a sound and marketable article, while the bulk of the *divi divi* was unsound and unmarketable. 2d. That the defendants, when they made this warranty to the plaintiffs, knew that it was false, and knew that the bulk of the *divi divi* was damaged, and that the sample shown was not a fair sample thereof; and that to carry out their fraudulent representations and prevent their detection, on delivering the *divi divi* to the plaintiffs, the defendants stowed it in bags with sound *divi divi* on the outside, and unsound *divi divi* in the centre of the bags. Whereupon the defendants objected to any parol proof of the alleged warranty. The court sustained the objection, and the plaintiffs excepted. The defendants then asked leave to amend the complaint by charging fraud. The defendants objected to such amendment. The court sustained the objection, and the plaintiffs excepted. The court dismissed the complaint. Judgment was thereupon entered up against the plaintiffs for the costs of the action, and from this judgment the plaintiffs appealed.

*M. V. B. Wilcoxson*, for the appellants. I. The plaintiffs offered and were prepared to prove, under the issue raised by the pleadings as to a warranty of the goods, that at the time of the sale of this *divi divi*, it was stowed in bulk in the hold of a ship afloat in the harbor of New York, where it could not be inspected, and that, under these circumstances, the defendants represented and warranted to the broker, who effected the sale to the plaintiffs, that the bulk of such *divi divi* then on ship board corresponded in quality with the sample exhibited at their office. They further offered to prove that, by the general and uniform usage of the trade, merchants and brokers dealing in the article always bought and sold it

by sample, and that the bought and sold notes of the article never contained a statement that the sale was by sample, although the sales were uniformly so made in fact. Evidence of this usage as to the manner of making the sold note was admissible, in order to a just construction of the sold note upon its terms, connected with the subject matter and the parties concerned in the transaction, and the justice erred in refusing to receive it as explanatory of the contract. (*Boorman* v. *Jenkins*, 12 *Wend.* 574.)

II. But the pleadings in the case distinctly put in issue the question of fraud and concealment on the part of the defendants in the sale of the *divi divi.* The evidence offered was clearly admissible under this issue. We offered to show that the defendants, during the negotiation for the sale of the *divi divi*, warranted the bulk to be equal to the sample, and concealed the fact that it was not so, with a knowledge at the time of their concealment of the falsity of their warranty. This was a fraud, and gave us a right of action for damages. (1 *Parsons on Contracts*, 463. *Moses* v. *Mead*, 1 *Denio*, 385. *Gallagher* v. *Waring*, 9 *Wend.* 27.)

III. The learned justice below misconceived the character of the pleadings in holding that they did not raise an issue as to fraudulent misrepresentation and concealment. 1. The whole complaint, taking its statements that the *divi divi* was sold by the defendants to the plaintiffs by the exhibition of a sound sample, with a representation on the part of the defendants to the plaintiffs that the bulk of it was of as good quality as the sample shown, in connection with its statement that the bulk of the *divi divi* delivered was nearly worthless, and not equal to the sample shown, and that the defendants concealed the bad quality of the bulk of it on delivery by their artful manner of packing it, *thereby intending to prevent the detection of its damaged state,* and that, in consequence of the premises, the plaintiffs were damaged to the amount of $800, amounts to the statement of a cause of action for fraudulent representation and concealment. 2. The

Koop *v.* Handy.

code permits a party to join in his complaint a cause of action for a breach of warranty with a cause of action for fraudulent representation or concealment, where both causes of action arise out of the same transaction, as was the case here. (*Code,* § 166, *sub.* 1.) 3. If both causes of action could not be united, then the plaintiffs had a right, the defendants not having demurred for uniting improper causes of action, to proceed on the trial for fraudulent misrepresentation and concealment, or for breach of warranty, as they might elect, and the court below erred in refusing to permit them to do so. 4. The answer of the defendants shows that they regarded the action as founded in fraud. They deny the fraudulent acts of concealment charged in the complaint, *"and this defendant denies all fraud charged in said complaint.* Defendants say they sold said *divi divi* in good faith, and without any fraud, deceit or fraudulent representation, respecting the same."

*J. T. Williams,* for the respondents. I. The broker's memorandum, or note of sale, contained the whole contract, and it was not competent to vary or extend its terms by parol evidence. 1. The bought and sold note of the broker "constitutes the bargain and is the proper evidence of it." (*Smith's Merc. Law, Amer. ed.* 588, *and cases cited in the note.*) In *Peltier* v. *Collins,* (3 *Wend.* 459,) the court, Marcy, J. page 466, say: "The object of the memorandum is not merely to prove that there was a bargain, but to show what the bargain was." In *Suydam* v. *Clark,* (2 *Sandf.* 133,) the court say: "The broker is the agent of both parties, and the notes which he delivers to the parties evidence their contract." In *Allan* v. *Augira,* (5 *Leg. Obs.* 380,) the court say: "The broker's memorandum delivered to the parties is the best evidence of the contract." 2. The contract containing no warranty, none can be proven by parol. In *Bayard* v. *Malcolm,* (1 *John.* 460,) the court, Thompson, J. say: "All previous representations must be considered as conversations leading to a con-

tract, to be consummated by the bill of sale, and as coming within the rule adopted by the court in the case of *Vander-voort* v. *Smith*, (2 *Caines' Rep.* 161,) and the case of *Mumford* v. *McPherson*, decided at this term—*that when an agreement is reduced to writing, all previous treaties are resolved into that.*" And again, in the same case, (*p.* 466, 7,) Kent, J. says: "Nor could any parol warranty have been shown, for the contract, being reduced to writing, excludes all anterior verbal negotiations and promises, as being resolved into the writing, which is the consummation and only evidence of the agreement of the parties." Lord Abinger says, (4 *Mees. & Wels.* 144,) "If there has been a parol agreement, which is afterwards reduced by the parties to writing, that writing alone must be looked to to ascertain the terms of the contract." In *Reed* v. *Wood*, (9 *Verm. Rep.* 285,) the court say: "Where on a sale of articles of personal property, a sale note is given describing the property sold, and receipting the price, but containing no warranty, the purchaser cannot give parol evidence to prove a warranty." (*See also Van Ostrand* v. *Reed*, 1 *Wend.* 424, *particularly the language of the chief justice, on p.* 432; *Niles* v. *Culver*, 8 *Barb.* 205; *Randall* v. *Reed*, 1 *Curtis' R.* 90; *Harnor* v. *Groves*, 80 *Eng. Com. L. Rep.* 667, *especially remarks of Maule, J. on p.* 673; *Willard's Eq. Jur.* 73, 286.) 3. The doctrine that the sale of *packed cotton* is an exception to the rule now contended for—based, first, upon proof of a universal custom of selling it by sample, as in the case of *The Oneida Manufacturing Society* v. *Lawrence*, (4 *Cowen*, 440, 444,) and the case of *Boorman* v. *Jenkins*, (12 *Wend.* 566, 575,) and afterwards, in the case of *Waring* v. *Mason*, (18 *id.* 425,) in the supreme court, (*see note, foot of p.* 426,) based upon the theory "that a sale of cotton in bales, not open to the inspection of the purchaser, raises an implied warranty that the article is merchantable and free from damage"—is expressly repudiated by the court of errors in the last named case, (*see prevailing opinion of the court, by the*

*chancellor*, *p.* 433,) where the doctrine here contended for, by the defendant, is impliedly recognized even in the case of packed cotton. The chancellor (*p.* 435) says: " The objection that the memorandum made by a broker in his books makes no mention of its being a sale by sample, is not well taken. That memorandum was not signed by the broker, so as to make it binding on either party as a written agreement, even if he could be considered as the agent of both parties in making the sale ; and a bought or sold note was not given by him to either of the parties. The entry was, therefore, a mere private memorandum of the broker, which was not binding on any one as a written agreement."

II. The motion for leave to amend was properly denied. Such an amendment would change the nature of the action, and could not be made on the trial at circuit. The action was upon a *contract* of warranty, which was in fact, as appeared upon the trial, a written contract. The motion was to change it into an action sounding in *tort*—an action which, in its very nature, excludes the idea of contract—as fraud vitiates, wipes out and annihilates all contract. To maintain an action, such as was sought to be instituted by the amendment asked for, a case must be made out, such as would have justified a repudiation of the contract of sale, and permitted the plaintiffs to return the property and bring an action for the price paid for it; or, if payment had been made by the delivery of personal property, an action of replevin for such property.

The action set forth in the complaint was of a nature totally distinct from that sought to be set up by amendment. The one touches the character of the defendant for honesty and integrity, the other simply asks the fulfillment of a contract, which might have been omitted to be fulfilled solely from poverty, and therefore does not even touch the honor of the party. To defend against the one might be to a party a matter of indifference. To defend against the other might be to him a matter of great moment.

*By the Court,* CLERKE, J. I. For the present, let us assume that this is an action for the breach of a contract of warranty. The instrument, upon which it is founded, is in the following words:

*New York, Dec.* 30, 1859.

Sold Mr. G. H. Koop, for account of Messrs. Handy & Everett, about 20 tons *divi divi*, at $45 cash per ton, to be put in bags and delivered as soon as possible.

JOHN L. KAHL, broker,
78 Pine street, near Pearl.

The counsel for the plaintiffs called the broker, Mr. Kahl, as a witness at the trial. He testified, that he went to the office of the defendants in Burling slip, got from them a sample of this *divi divi*, (an article of commerce of which, by the way, I have never before heard,) ascertained their price for it, carried the sample to the plaintiffs, at their office in Cedar street, and thereupon executed, in his office in Pine street, a sale note, of which the above is a copy, gave a copy of it at once to the defendants, and a day or two afterwards gave the original to the plaintiffs. The plaintiffs' counsel then asked the witness whether the defendants, at the time he procured the sample from them, said any thing in relation to the quality of the bulk of it, as compared with the sample. The defendants' counsel objected to the question, on the ground that the sale note, being in writing, no parol evidence in relation to the sale could be received. The court sustained the objection, and the plaintiffs' counsel duly excepted.

It is scarcely necessary to state the well known rule, that, where a written contract appears on its face to be complete, you can no more add to or contradict its legal effect by parol stipulations, preceding or accompanying its execution, than you can alter it through the same means in any other respect. The instrument must, however, have completeness on its face; and, as a general rule, every instrument is presumed to be complete. But, in order to exempt a case from the

operation of the rule, it is not necessary that the writing should expressly and directly rebut the presumption of completeness. In *Jefferey* v. *Walton*, (1 *Stark.* 267,) referred to by Mr. Phillipps in his Evidence, and by Judge Cowen in his Notes to this work, an action was brought for not taking proper care of a horse which the defendant had hired of the plaintiff. At the time of the hiring the following memorandum was made: "Six weeks at two guineas. William Walton, jun." Lord Ellenborough treated it as a contract incomplete on its face. In admitting evidence that the defendant, at the time of hiring, agreed by parol to be responsible for all accidents, he said: "The written agreement merely regulates the time of hiring, and the rate of payment, and I shall not allow any evidence to be given by the plaintiff in contradiction of these terms; but I am of opinion that it is competent for the plaintiff to give in evidence supplementary matter as part of the agreement." Bills of parcels have been held to fall within the range of the exception. In *Harris* v. *Johnson*, (3 *Cranch*, 311,) it was held that a bill of parcels, or sale note, delivered by the vendor, stating the goods as bought of the vendee and another, is not conclusive evidence against the vendor that the goods were joint property; but the real circumstances may be explained by parol. There are many similar cases. The most recent in our own courts is that of *Filkins* v. *Whyland*, (24 *N. Y. Rep.* 338.) The instrument was in the following words:

"C. B. Filkins bought of C. Whyland one horse, $150.
Rec'd payment. C. WHYLAND."

It was held that this did not exclude parol evidence of a warranty of soundness. It was held that it was a mere acknowledgment of payment, and was not meant by the parties to be a written contract. The court were of the opinion that, to justify the exclusion of parol evidence, the contract must be a formal one, and that it must appear,

from the face of the instrument, that the parties intended to consummate the agreement by writing.

The instrument, in the case before us, would be very nearly similar to that in *Filkins* v. *Whyland*, if it had a receipt appended to it. It is, evidently, a mere note or memorandum of the sale, signed by the broker, without any indication that it should contain all the terms necessary to satisfy either party, or to consummate their intentions in a transaction of this nature. It is silent as to the place of delivery, and as to the place where the article was then situated. It is in every respect as informal as the memorandum in *Filkins* v. *Whyland;* and I can scarcely think that the mere absence of a receipt, appended to it, makes it more formal or more complete than the memorandum in the case to which I have referred. Suppose, for instance, that the broker in this case, after he signed his name to this note of sale, signed a receipt subjoined to the note or on the other side of the paper, would it, in effect, be at all different ? Would the receipt detract from the formality of the instrument ? I am disposed to think none of these *memoranda* of sales, whether receipts are or are not appended to them, are ever intended by the parties to be complete contracts. They all alike want that formality without which it cannot be supposed that the parties exercised that forethought and circumspection which they no doubt would have exercised, if the instrument was any thing more than a mere note, memorandum, or entry.

I am aware that *Harnor* v. *Groves* (6 *J. Scott*, 667 ; 80 *Eng. Com. Law Rep.* 667) is strongly opposed to this view. The instrument, in that case, was a mere memorandum or note ; and all the judges held that the parties were bound by the written note, and that the purchasers could not be allowed to prove, by parol evidence, that the article sold was warranted. The only difference between that and the case under consideration is, that in the one, the note of sale was signed by the vendor himself ; in the other, it was signed by a broker, who casually undertook to intervene between the

parties. This difference may not be essential, although, I think, in taking into consideration the question of formality and completeness, that it is not without weight. At all events, if *Filkins* v. *Whyland* is sufficiently in point, it, of course, controls our decision.

II. Even, however, if this memorandum should be deemed a complete contract, I am inclined to think that the plaintiff was entitled to prove fraud on the part of the defendants in this transaction. I do not deem this an action *ex contractu,* but an action *ex delicto.* A well established exception to the general doctrine, which regards all anterior and contemporaneous stipulations and representations as merged in the written contract, exists where one party sues another, alleging as the *gravamen* of his action some fraud of the latter, by which the former was induced to enter into the contract. The pleadings in this case sufficiently, though not formally, put in issue the question of fraud and concealment on the part of the defendants, in the sale of the *divi divi.* The complaint states that the defendants represented to the plaintiffs that their said *divi divi* was of as good a quality as the sample shown to them; that the plaintiffs believed such representations to be true, and, relying upon these representations, made the purchase; that the bags containing the same were nearly filled with damaged *divi divi,* which was almost worthless, and which inferior and worthless article was covered on the top and sides with *divi divi* of the kind and quality represented to the plaintiffs; the defendants thereby intending to prevent the detection of said damaged *divi divi.* The *gravamen* of the complaint then seems, or may, without violence to the language, be deemed to be fraud. It is not necessary, at all events, under our present system, to allege fraud in set and technical terms.

The defendants in their answer assume the allegation of fraud in the complaint; and, in express and positive terms, traverse it, clearly making fraud the issue to be tried. On this ground, therefore, if not upon the ground which I have

first presented, I feel greater confidence in thinking that this judgment should be reversed, and a new trial ordered ; costs to abide the event.

It may be well to notice a point taken by the counsel of the plaintiffs, in which he insisted that the law, in the sale of commodities like *divi divi*, will raise an implied warranty. He insisted, even if this memorandum could be considered a complete contract, that according to *Boorman and Johnston* v. *Jenkins*, (12 · *Wend.* 574,) and *Waring* v. *Mason*, (18 *id.* 425,) the law implies a warranty, as in a sale, by sample, of cotton. If these cases take the sale of cotton by sample out of the general rule of the common law, so as to create an implied warranty, it must be, as the chancellor says in the latter case, upon the ground that it is impossible, in the customary mode of examining and selling cotton in the bale in this country, for the purchaser ·to ascertain the defect, and that it is not within the principle of the common law rule of *"caveat emptor."* We would not be justified, I think, even if there was a more positive and stronger current of authority in favor of cotton, to extend the exception to the article sold to the plaintiffs in this case. Neither was there any proof, or any offer to prove that it was impossible, or extremely difficult, for the purchaser to examine the article, from the manner in which it was packed or situated, in order to ascertain its condition. On the contrary, the defendants allege in their answer that the *divi divi* lay in the hold of a vessel called the Alna, at the port of New York, open to the inspection of all, and where the same could easily have been examined. There was no offer, on the part of the plaintiff, to rebut this allegation.

I repeat, however, for the reasons which I have above stated, that the judgment should be reversed, and a new trial ordered ; costs to abide the event.

[New York General Term, May 2, 1864. *Clerke, Sutherland* and *J. F. Barnard*, Justices.]