THE STATE, SAMUEL CUMMINGS, JR., PROSECUTOR, v.
CATHARINE E. CASS.

1. Fraudulent oral representation by a vendor in respect to the quality of an article sold is admissible in evidence to show deceit, or a right to rescind the sale, although a written warranty as to other qualities of the chattels sold was made at the time of the sale.
2. Where fraud in a representation is alleged to consist, not in a knowledge by the vendor of the falsity of the fact stated, but in the falsity of an affirmance that he knew the facts stated to be true of his own knowledge, it is sometimes a question of fact and sometimes one of law whether such an affirmation was made.
3. Such an affirmation may be implied without express words, and, on the other hand, express words of affirmation of personal knowledge may be nullified by the nature of the facts concerning which the representation was made.
4. Representations made by the vendor of a horse that the animal could travel a certain distance in a certain time, when such representations were not coupled with an assertion of personal knowledge of their truth, but with a true statement that the horse had been used in a certain employment, can only be regarded as the expression of a strong belief in the truth of the representation.

On *certiorari* to the Essex Common Pleas.

Argued at June Term, 1889, before Justices SCUDDER and REED.

For the plaintiff in *certiorari*, *Franklin M. Olds*.

For the defendant, *Robert H. McCarter*.

The opinion of the court was delivered by

REED, J. Catharine E. Cass brought an action against Samuel Cummings, Jr., in the Second District Court of Newark, for the recovery of the sum of $125, the price which she had paid for a horse purchased by her of Cummings.

The gravamen of the demand of the plaintiff was, that such sale was brought about by the fraudulent representation of

the defendant, which fraudulent conduct conferred upon her the right of rescission, and that in the exercise of such right she tendered back the animal and demanded a return of the consideration paid, and that the defendant refused to comply with such demand. The case was tried before a jury, and, under the law as charged by the court, the jury found the facts to be such as to entitle the plaintiff to a verdict for the full amount paid.

The judgment entered upon this verdict was taken to the Essex County Common Pleas and there affirmed.

That judgment is brought up by the present writ.

The representations, the falsity of which constituted the ground of the verdict against the defendant, appear by the state of the case agreed upon by the attorneys to have been made as follows: One Van Buskirk, as the agent of the plaintiff, inquired of defendant about a certain brown horse owned by defendant. Van Buskirk asked if the brown horse could travel seven or eight miles an hour, and stated that a horse that could do that was required. The defendant said that the brown horse was too slow for that purpose, but pointed Van Buskirk to a gray horse, stating that he could easily go seven or eight miles an hour, as it had formerly been a very fast horse and attached to the salvage corps wagon, but that meeting with an accident one day, while going to a fire, it had injured one leg a little, making it unfit for the work required of it by the salvage corps. On another occasion, Mr. Cass, in the presence of his wife, the plaintiff, stated to defendant that they desired a horse that could make the distance between Rockland and Orange Valley, between seven and eight miles, in one hour or one and a half hours, and stated that if the horse could not do that they didn't want to buy him, to which defendant replied that the horse could easily do that.

Plaintiff sought to try the horse by driving him one evening, but the defendant refused to allow said trial, stating that the horse had already on that day been to Harlem and Orange, which statement was true. The next morning plaintiff pur-

chased the horse for $125, paid $50 in cash and gave a promissory note of four months endorsed by Mr. Van Buskirk. There was evidence that the horse was not able to travel seven or eight miles in one hour or in one hour and a half, and was not fit for the purpose for which he had been bought. It appeared on the cross-examination of the plaintiff that at the time of the sale a written warranty of the horse had been given in the following form: " Newark, April 6th, 1887. To one gray horse Charley, which I warrant to be sound and kind with the exception of straining of muscle of left hind leg." The counsel for defendant thereupon moved that all evidence as to representations made by the defendant, other than those contained in the written warranty, be stricken out, on the ground that the agreement of the parties having been reduced to writing such writing could not be varied or enlarged by parol evidence. The court denied the motion and allowed an exception.

When the plaintiff rested his case the counsel for defendant moved for a non-suit, upon the ground that a written warranty having been proved to have been given on the sale of the horse, and there being no evidence that the horse did not correspond with this warranty, the plaintiff had not made out any case for damages. This motion was denied and an exception was allowed.

At the close of the summing up of counsel, the counsel for the defendant requested the court to charge the jury, that there being a warranty the jury cannot consider any testimony as to any representation not contained therein. This request was refused and an exception allowed.

The court charged the jury, that if they believed that the representations alleged to have been made in relation to the speed of the horse were made, and that the plaintiff relying upon them purchased the horse, and that such representations were in fact not true, and the horse was, therefore, unfit for the purpose for which it was bought, that plaintiff could recover the purchase money, she having offered to return the horse, on the ground of fraud or deceit which was independent

and irrespective of the so-called warranty.    To this portion of the charge an exception was allowed.

The counsel for the defendant also requested the court to charge, that if the jury should find for the plaintiff that the measure of damages must be the difference in value between what the horse was actually worth in the condition he was at the time of the sale and what he would have been worth if the representations made by the defendant had been true, which request the court refused to charge, and allowed an exception.

The court, to the contrary, charged the jury, that if they found for the plaintiff they must find in the sum of $125, that being the price she had paid for the horse.    An exception was allowed to this part of the charge.    Reasons covering the above exceptions were assigned for the reversal of the judgment below.

The primary question raised by the exceptions and argued with elaborate care, is one of evidence.    It involves the correctness of the judicial ruling, by which the testimony in respect to certain representations made by the vendor previous to and at the time of the sale, were admitted in evidence. These representations, as already appears, were made in respect to the traveling qualities of the animal sold.    It also appears that there was a written warranty in respect to the quality of soundness and quietness.    It is insisted by the counsel for the defendant below, that the admission of the verbal representations enlarged and varied the written contract.    He therefore invokes the inexorable rule of evidence, that when parties have put their contract into writing oral testimony cannot be substituted for or added to the written evidence of the agreement.    1 *Greenl. Evid.*, § 88.

This principle has, from the earliest period of jurisprudence, been recognized as a wholesome and necessary rule of public policy.    1 *Greenl. Evid.*, § 275 ; *Wright* v. *Remington*, 12 *Vroom* 48 ; *S. C.*, 14 *Id.* 451 ; *Naumberg* v. *Young*, 15 *Id.* 331.

But this rule of evidence is not infringed by the admission of parol testimony which is not intended as a substitution for or an addition to a written contract, but which goes to show that the instrument is void or voidable, and that it never had any legal existence or binding force either by reason of fraud, or for want of due execution and delivery, or for the illegality of the subject matter of the contract. 1 *Greenl. Evid.*, § 284.

Nor is the admission of parol evidence, for the purpose of avoiding a written contract on the ground of fraud, confined to such testimony as goes to show that a party was lured to make a contract other than that intended, as by the substitution of one contract for another by trickery, or by misreading a contract to an illiterate person. Parol testimony may be admitted to show that the execution of a written contract was brought about by a fraudulent representation. · The force given to a seal, which formerly excluded testimony in respect to the failure of consideration in a specialty, is now abolished by legislation. So that the rule above stated respecting the admissibility of fraudulent representation, is now applicable to all contracts. The elements essential to constitute such fraudulent representation will be considered later, and it is now necessary only to remark, that such evidence as will lay a foundation for an action of deceit or a ground for the rescission of the contract, is always receivable, although it consists of oral representations. This point was strenuously denied in the arguments submitted by the counsel for the defendant. His contention was, that fraud in the execution of the instrument could be shown, but that oral representations going to a failure of consideration only, could not. The seeming strength of his contention lay in the likeness between the written and the oral facts in the present case, both concerning the quality of the animal sold. The written warranty applied to the soundness and kindness of the horse, and the oral testimony to the speed of the animal. The danger of permitting parol declarations to be proved, which were so nearly related to the subject matter of the written warranty, was strongly

pressed as an evil which the rule of evidence already stated seemed especially designed to prevent. But the distinction between such representations as add to the contract and such as avoid the contract, because of their fraudulent character, is too firmly established in our jurisprudence to be now shaken. As an additional warranty, that is an addition to the contract, the present representations were clearly inadmissible. So soon, however, as they displayed such features as went to show that through them the contract had been fraudulently induced, and so was unenforceable for that reason, at the election of the defrauded party, the rule excluding parol testimony to enlarge a written contract became inoperative. It is of course obvious, that the fact that there was a written warranty in respect to the soundness and kindness of the animal would be a forcible argument that no other representations as to quality were made. The existence of the written warranty would be useful in determining the probability of the truth of the counter statements of the parties as to the existence or non-existence of the parol declaration. But when the fraudulent affirmations are once proven to exist, the written contract becomes unimportant. This seems to be an elementary principle of the law of evidence. The right to prove fraud, in whatever shape it may exist, to avoid written contracts, has been so uniformly recognized that it can hardly be said to have been the subject of serious judicial discussion. The power to consider parol evidence in regard to its effects upon contracts in respect to the question of fraud, has been passed over *sub silentio*, and the courts have gone on to consider the probative force of the testimony. No case was discovered by the industry of counsel which excluded such testimony, and all the cases in which judges have touched upon the subject have assumed the admissibility of testimony setting up fraudulent representations to avoid a written contract. *Dobell* v. *Stevens,* 3 *Barn. & C.* 623 ; *Hotson* v. *Browne,* 9 *C. B., N. S.,* 441 ; *Koop* v. *Handy,* 41 *Barb.* 454 ; *Prentiss* v. *Russ,* 16 *Me.* 30 ; *Van Buskirk* v. *Day,* 32 *Ill.* 260 ; *Eaton* v. *Eaton,* 8 *Vroom* 108.

I conclude, therefore, that if the evidence established fraudulent conduct on the part of the defendant, the testimony was properly admitted.

This conclusion leads to the consideration of the testimony received and submitted to the jury. This consideration involves two questions: *First.* Was the testimony properly submitted to the jury at all? *Second.* If so, was it submitted under proper instructions?

As already remarked, the admissibility of the testimony, and, therefore, its submission to the jury, depends for its sanction upon the question whether it was sufficient, in any aspect in which the jury might view it, to establish fraud.

The general character of a fraudulent representation which will lay a foundation for an action for deceit, or a ground for a defence against a counter action upon a contract, or a basis for the rescission of a contract, are well settled, so far as general rules can settle any legal question. The representation must be concerning a material fact, must induce to the execution of the contract, and must be made falsely. The falsity constitutes the *scienter*, which is an essential element in every fraudulent representation. This falsity may consist in making a representation of a material fact knowing it to be false, or it may consist in making a representation which is untrue without knowledge whether it is true or false, and by coupling with the representation an expressed or implied affirmation that it is known to be true of personal knowledge. The instances in which representations can be said to be fraudulent, as they are cognizable in a court of law, are confined within the limits of the above statement. The case of *Bennett* v. *Judson,* 21 *N. Y.* 238, which attempted to extend the limits of this rule beyond that stated, and import into it the equitable doctrine laid down by Judge Story, has been repudiated by subsequent cases in the courts of that state. *Oberlander* v. *Spiess,* 45 *N. Y.* 175; *Stitt* v. *Little,* 63 *Id.* 427; *Wakeman* v. *Dalley,* 51 *Id.* 27.

And this is the rule of the common law courts of England and Massachusetts, and our own state, as shown by Mr. Jus-

tice Depue in the case of *Cowley* v. *Smythe,* 17 *Vroom* 380.
The *scienter,* therefore, must be proved in one or the other of
these shapes.   In the present case, it was not proven in the
first shape, for proof of a knowledge of the falsity of the
statement on the part of the vendor of the horse was not at-
tempted, nor was the question submitted to the jury.   The
question arises, therefore, whether a *scienter* appears in the
second possible shape.   It does not appear that the defendant
expressly stated that the facts affirmed were true of his own
knowledge.   In examining the cases, however, we discover
that an express affirmance of personal knowledge is not always
requisite, as such affirmance may be implied.   Nor, on the
other hand, does it appear that an express affirmance of per-
sonal knowledge is to be taken as fixing conclusively the de-
fendant's liability, for it may be so qualified by the facts
stated as to convey a modified impression.   Indeed, the test
seems to consist, not so much in the absence or presence of an
expressed assertion of personal knowledge, as in the character
of the facts alleged to be true.   The rule of discrimination
stated by Mr. Justice Depue, in *Cowley* v. *Smythe,* 17 *Vroom*
380, is this : " If the party adds to a representation an affirm-
ance, or he makes a representation of his own knowledge, the
force and effect of the evidence will depend in great measure
upon the nature of the subject concerning which the represen-
tation is made.   If it be in respect to the specific fact or facts
susceptible of the exact knowledge, and the subject matter be
such that the affirmance of knowledge is to be taken in a strict
sense, not merely as a strong expression of belief, the falsehood
in such representation lies in the defendant's affirmance that he
had the requisite knowledge to vouch for the truth of the
assertion, and that being untrue, the falsity will be willful,
and therefore fraudulent.   But, where the representation is
concerning an assertion or affirmation not susceptible of exact
knowledge, the assertion is to be taken *secundum subjectam
materiam,* as meaning no other than a strong belief founded
upon what appeared to the defendant to be reasonably certain
ground."   Therefore, without regard to whether the affirmance

of personal knowledge was express or otherwise, the existence of such affirmation depends upon the form of the affirmation of fact, and of the character of subject matter concerning which the affirmation was made.    From these circumstances, it must be considered, in the language used in *Marsh* v. *Falker,* 40 *N. Y.* 562, whether the party assumed or intended to convey the impression that he had actual knowledge, though conscious that he had not.

In the following cases there was no express affirmance of personal knowledge: *Hazard* v. *Irwin,* 18 *Pick.* 95; *Milliken* v. *Thorndike,* 103 *Mass.* 382; *Litchfield* v. *Hutchinson,* 117 *Id.* 195; *Wakeman* v. *Dalley,* 51 *N. Y.* 27.

The question, whether there is an affirmation of personal knowledge, is sometimes one of law, but oftener one of fact. In the line of cases of which Cowley *v.* Smythe is a sample, it is treated as a question of law, arising from the character of the facts which were the subject matter of the representation.    It was legally concluded that the representations could only be those of belief.

On the other hand, there might be express affirmance of personal knowledge with respect to facts so obviously the subject of accurate knowledge, that it could be legally concluded that it was not an expression of belief or opinion, and that therefore the falsity of the facts stated would imply a *scienter.*    In a wide range of cases the question of the existence of an affirmation of personal knowledge was submitted as one of fact, and it was either in support or reversal of the finding of juries or reports of referees that the legal rules applicable to such representations were laid down.    This will be observed by reference to the following cases: *Tucker* v. *White,* 125 *Mass.* 344; *Milliken* v. *Thorndike,* 103 *Id.* 382; *Page* v. *Bent,* 2 *Metc.* 371, and cases already cited upon the preceding points.

In the present case, it appears, to my mind, clear, that it could not be legally inferred that there was an assertion of personal knowledge of the truth of the facts stated.    The whole conversation between vendor and purchaser suggested

the opposite. It implied that the vendor's knowledge of the traveling ability of the horse rested upon what he knew of the previous history of the animal, and perhaps in some degree from the use of a horse by other persons. The animal seems to have been used for livery purposes. The horse had been admittedly driven to Orange and Harlem the day before the sale was consummated. The vendor did not say that he had driven the horse the alleged distance in the time stated. He does not say he had driven him at all. His statement, that the horse could easily do that, for he had been a very fast horse and had been used to the salvage corps wagon, implied that his knowledge was grounded upon such information, rather than upon personal knowledge. Therefore, it seems to me, that it was clearly a mistake for the court to say that the representation was so obviously of a fact susceptible of exact information made as of the personal knowledge of the vendor, that this question was not one to be left to the jury.

It also seems to me that the representations, as they appear in the case, and as they were treated at the trial, amounted to something more than an affirmation that the horse was able to travel the distance named within the time mentioned on a single occasion, but they implied that the animal could habitually do so. The idea conveyed was, that the horse was to be fit for the service required, namely, to convey the purchaser from Rockland to Orange Valley, in the course of his business. This seems to involve the question of the horse's ability to perform that service continually. Now, it seems apparent, that when the representations not only cover the present ability to perform a service once, but also its ability to do so frequently and continuously, it extends beyond the realm of exact information, if it does not cease to be a representation of a subsisting fact at all, and become a mere promise for future performance. But, without regarding this feature of the case, I am convinced that, in assuming that the present case was one in which the falsity of the representation raised the legal inference of fraud, the court was in error.

The case of *Searing* v. *Lum*, 2 *South.* 785, was an action for deceit, brought in a justice's court, grounded upon the false representations in the sale of a horse. The gravamen of the action was, that the vendor had represented the horse to be sound and kind. The justice charged that it was unnecessary to prove that the defendant had any knowledge of the unkindness of the horse. The court above held this to be error.

The case of *Allen* v. *Wanamaker*, 2 *Vroom* 370, was an action for false representations, in that the defendant represented certain peach trees to be good. The court charged that the defendant was liable for such representations, if false, whether he knew them to be true or not. This was held error.

I, however, incline to the opinion that in this case the question, whether there was an affirmation of personal knowledge of the truth of the representation, was not one for the jury. But I think that this is so, because the representations were of a kind concerning which the judge could say it was legally inferable that they were the statement of a strong belief only in the truth of the facts asserted. The feature of the case already mentioned which led me to the conclusion that the assumption of the trial judge was a mistake, leads me to the opposite conclusion, that the legal inference to be drawn is, that it could not have been understood by the vendor and the vendee, at the time of the sale, that there was coupled with the representations concerning the horse that the vendor had personal knowledge concerning them, but that it was understood that he expressed his strong belief in their truth, resting upon his knowledge of the previous history of the animal and his use as a livery horse.

For these reasons, I think the judgment below should be reversed.