ABRAHAM WISE and ELI W. ARNOLD, Respondents, v. HEZE-
KIAH S. CHASE, ANDREW MCKINNEY and GEORGE W.
MERRITT, Appellants.

One who, upon a purchase of goods, agrees to deliver to the vendor vouch-
ers of a public officer to the amount thereof, and, in pursuance of such
agreement, delivers the vouchers, has fully performed his part of the
contract, and discharged himself from liability thereon.

The fact that these vouchers are not paid by the government, to their nominal
amount, creates no cause of action against the purchaser. He is in no
way a guarantor that the purchase price will be realized upon them.

The vendor having given a receipt for the vouchers as "in payment," the
rule that a debtor cannot discharge his liability by his own checks, notes
or other paper devices, unless good for what they profess to be, no mat-
ter how strong a receipt he may have persuaded his creditor to give, has
no application. The liability of the purchaser was never for payment,
but simply for the delivery of the vouchers. Having done this, the risk
of payment is entirely with the vendor.

Accordingly, where the defendants, having a contract for furnishing certain
military goods to the State of Kansas, purchased a portion thereof from
the plaintiffs, and thereupon signed a memorandum, specifying the varie-
ties and prices, by which they agreed to deliver to the plaintiffs "Gov-
erner Robinson's vouchers, by his quartermaster * * * for the amount
of said goods," which vouchers were afterwards delivered, and a receipt
for the same, "in payment of bill," given by the plaintiffs, but upon
which less than seventy-five per cent of the whole bill was ever paid, in
an action to recover the balance,—*Held*, that the defendants had fulfilled
their contract and were not liable.

(Argued January 6, decided May, 1, 1871.)

APPEAL from an order of the New York Superior Court at
General Term, affirming a judgment entered in favor of the
plaintiffs, upon the report of a referee.

The material facts are as follows:

On the 27th day of January, 1862, the plaintiffs sold to the
defendants certain goods, to the amount of about $8,600.
The agreement between the parties was contained in the fol-
lowing written instrument:

"NEW YORK, *January* 27, 1862.

"Having this day purchased of Wise & Arnold six thou-
sand gray flannel overshirts, at $11.75 per doz.; six thou-

sand Canton flannel drawers at $5 per doz.; two hundred overalls at $5.50 per doz; we do hereby agree to deliver to said Wise & Arnold, Governor Robinson's vouchers by his quartermaster, within a few days after the arrival of said goods at their destination at St. Louis, for the amount of said goods.

   "Signed.   CHASE, McKINNEY & CO."

. The goods were delivered at St. Louis within a few days after the contract, and the vouchers of Governor Robinson by his quartermaster, for the amount of the goods, were delivered to the plaintiffs. The plaintiffs gave to the defendants a receipt for the vouchers, which, as they testified, was expressed to be "in payment of the said bill of goods." The vouchers were not accepted and paid by the United States government, but the sum of $6,000 was received thereon, leaving an unpaid balance on the plaintiffs' bill of about $2,500. The referee found that the vouchers were not delivered in payment of the demand for the goods sold, and as matter of law he found that the defendants were liable to the plaintiffs for the balance of the bill of goods sold, and ordered judgment accordingly. The General Term of the Superior Court of the city of New York affirmed this judgment, and the defendants appealed to the Court of Appeals.

The case below is reported 3 Robertson, 35.

*Samuel Hand,* for the appellants, cited *Filkins* v. *Whyland* (24 N. Y., 338); *Buswell* v. *Poineer* (37 N. Y., 312); *Eaton* v. *Alger* (2 Keyes, 41); *Noel* v. *Murray* (3 Kern., 167); *Des Arts* v. *Leggett* (16 N. Y., 598); *Herdenheimer* v. *Lyon* (3 E. D. Smith, 56); *Conkling* v. *King* (6 Seld., 440); *Mason* v. *Lord* (40 N. Y., 476); *Wegnan* v. *Child* (41 N. Y., 159); *Hasbrook* v. *Paddock* (1 Barb., 635); *Doolittle* v. *Southworth* (3 Barb., 79); 2 Pars. on Cont., 501–5, 564.

*S. P. Nash,* for the respondents, cited *Hill* v. *Beebe* (3 Kern., 556); *Higby* v. *N. Y. & H. R. Co.* (3 Bosw., 497);

*Hendrickson* v. *Beers* (id., 639); *Torrey* v. *Hadley* (27 Barb., 192); *Noel* v. *Murray* (3 Kern., 167).

HUNT, C.   The instrument of January 27 constituted an agreement between the parties.   It was an agreement then and there executed on the part of the plaintiffs, by the delivery of the goods to the defendants, if the latter were to transmit the same to St. Louis.   If the delivery at St. Louis was to be made by the plaintiffs, then the contract was still executory on their part.   There is no statement that the defendants were to transport the goods to St. Louis, but the right to the vouchers was made dependent on the arrival there of the goods.   This would seem to have left the burden of transmission on the plaintiffs.   Whether an executed contract on the part of the plaintiffs or an executory one, is not, perhaps, important.   The question arises upon the defendants' obligation, and the contract in either form furnishes a sufficient consideration for their agreement.   That agreement was to deliver to the plaintiffs the vouchers of Gov. Robinson by his quartermaster for the amount of said goods.   The sum total of the purchase was not footed up at the time, as would seem from the contract.   The number of the articles purchased was stated, and the price per dozen of the articles was stated.   A simple arithmetical calculation would give the " amount of said goods."   The " amount of said goods," it now appears, was $8,600.   When the defendants, by their writing, agreed to give to the said plaintiffs vouchers to the " amount of said goods," they simply agreed to give vouchers which should express on their face that goods had been delivered to the amount of $8,600.   I read the contract, therefore, as if it had said: " We do hereby agree to deliver to said Wise & Arnold Gov. Robinson's vouchers by his quartermaster, within a few days after the arrival of said goods at their destination, at St. Louis, for the amount of $8,600."   The writing contains all the elements of a perfect contract, as distinguished from a mere receipt.   It is an acknowledgment of the purchase at specified prices, which is assented to by the

plaintiffs in receiving the paper. It contains the agreement by implication to deliver at St. Louis and an agreement that payment shall be made in Gov. Robinson's vouchers. (*Buswell* v. *Poineer*, 37 N.Y., 312; *Filkins* v. *Whyland*, 24 N. Y., 338.) It is simply an agreement to purchase the goods and to pay for them in the obligations or certificates or warrants of another party. This is a valid contract, binding on the seller who enters into it, and imposing no personal liability on the buyer further than to deliver the stipulated obligations of the third party. These the seller takes and holds at his own risk. If they do not produce the full amount expected, it is the loss of the seller and not the buyer. This well settled principle of law the plaintiffs' counsel now expressly concedes. He says, however, that the debtor cannot discharge his liability by his own checks, notes or mere paper devices, unless they are good for what they profess to be, no matter how strong a receipt he persuades his creditor into giving. To this effect he cites *Hill* v. *Beebee* (3 Kern., 556); *Higby* v. *New York* (3 Bosw., 497); *Hendrickson* v. *Beers* (3 id., 639).

This qualification is not applicable to the present case. As I read the contract, there never was any liability of the defendants to be discharged, except that of procuring the vouchers. They never agreed themselves to pay for the goods. If they had I agree that their own checks, notes or paper devices, could never discharge them.

The legal effect of this contract would have been no different if it had made the sum payable upon the receipt of the personal obligations of Gov. Robinson, and had read " We agree to deliver to said Wise & Arnold, the notes of Gov. Robinson (on demand or at twelve months) for the amount of said goods." The liability of the defendants would have been discharged upon procuring and delivering the genuine notes of Gov. Robinson, to the amount of the goods. The risk of payment would belong entirely to the seller. Suppose the agreement on the part of the defendants had been to deliver the bonds of the State of Kansas or of the United

States to the amount of the goods, would there have been a pretence that the defendants would be liable for their ultimate payment? Yet the genuine voucher of Gov. Robinson's quartermaster, free from fraud in the manner of its being obtained, is in law and in fact, as complete an obligation against these governments (whichever he represented) as their formal bond. He and his quartermaster were the recognized agents of the government to receive the military stores needed by them, and to issue certificates of indebtedness to the parties furnishing them. True there is no mode of compelling payment, if the government refuse to make it or insist upon a deduction; nor is there in any case where the government gives its direct obligation. It is a simple transaction of faith and confidence between the government and its citizens.

The finding of the referee that the vouchers were not delivered in payment of the plaintiff's demand, is in direct contradiction to all the testimony, including that of the plaintiff Wise. Neither is there testimony on which it can reasonably be found that the defendants on their own account received the proceeds of the vouchers from the government and paid them over to the plaintiffs. The vouchers were never claimed by either party to belong to the defendants after the delivery to the plaintiffs. The former were evidently desirous to render all the aid in their power to enable the plaintiffs to realize all their money. This is all the testimony shows.

I do not think it important to allude to the proposition, that, if this writing be not a binding contract, then the defendants were at liberty to show by parol, as they offered to do, what the actual agreement was.

I prefer to place my judgment upon the precise point that the writing constituted a contract between the parties; that the defendants performed it on their part by procuring and delivering the vouchers as agreed, and that there is not the slightest evidence of fraud on the part of the defendants or the military authorities. This relieves the defendants from

further liability and the securities received are at the risk of the plaintiffs.

Judgment should be reversed and a new trial ordered.

LEONARD, C.  The contract was to purchase a certain quantity of merchandise at fixed prices and deliver to the plaintiffs certain vouchers for the amount within a few days after the merchandise arrived at St. Louis.  The vouchers were the receipts of a military officer of the government for goods which had been delivered previous to the giving of the receipt, for the use of the government, and constituted the evidence upon which payment of the value of the goods, for which the receipts had been given, might be obtained from the war department.  They represented property and were of intrinsic value.  The contract imports the giving of the vouchers for the merchandise, and nothing is to be implied in respect to any other or different mode of payment.  The vouchers were delivered by the defendants and accepted by the plaintiffs.  There was an implied guaranty that they were genuine and free from any taint of fraud which would impair the facility, or the eventual right of obtaining payment from the department upon which they were drawn.  There was no guaranty, however, as to the immediate or future payment by the government.  The vouchers were not punctually paid by the government, but we are not distinctly informed by evidence that any just grounds existed for the neglect or refusal to pay them.  A letter of the defendants states that there were political differences between certain high officials of the government, which had delayed their payment.  Something is also said in the letter about the reinspection of the goods by a military board appointed for that purpose, and of a report by the board, according to which payment would be made.  But no evidence is given whether this board possessed any judicial authority or took any evidence, or had any jurisdiction to make any binding report.  It is to be inferred that, acting on the report, the validity of the vouchers was recognized by the government to the extent of about seventy-

five per cent only of their face.   It may be that the quarter-master, signing the voucher, fraudulently receipted for more than the value of the merchandise, and that the plaintiffs have a just claim to recover of the defendants for that reason. But, as the case stands, it appears that they surrendered their vouchers to the government on receiving a sum which the officers arbitrarily chose or consented to pay, when in fact there was no improper valuation of the merchandise, and no just reason why less than the face should be paid.   Government officials are not always immaculate, nor are contractors, and we can assume nothing on such a foundation.   The endorsement of the government draft by the defendants to the plaintiffs for the amount reported by the military board does not prove that the defendants assumed any liability for the loss sustained by the plaintiffs on their vouchers.   *Prima facie*, the delivery of the vouchers was all that the defendants contracted to do for the delivery of the plaintiffs' merchandise at St. Louis.   The fact that they realized only seventy-five per cent on the vouchers does not of itself afford the plaintiffs any right of action against the defendants. There is nothing more in the plaintiffs' case.   The judgment should be reversed and a new trial ordered, with costs to abide the event.

All for reversal.   Judgment reversed and new trial ordered, costs to abide the event.