BANK OF TAIWAN, LTD., Appellant, *v.* IRVING SCHILD and Others, as Copartners, Doing Business under the Firm Name and Style of IRVING SCHILD & Co., Respondents.

First Department, July 1, 1932.

*Daniel E. Hanlon,* for the appellant.

*Martin Conboy* of counsel [*David Asch* and *William J. Butler* with him on the brief; *O'Brien, Boardman, Conboy, Memhard & Early,* attorneys], for the respondents.

MERRELL, J.  The action is brought by plaintiff, as assignee of S. Nagasaku, of Yokohama, Japan, to recover the purchase price of 15,000 raw white Japanese rabbit skins sold to defendant by plaintiff's assignor.  Among other things, the contract for the purchase of the rabbit skins provided that payment should be made in the following manner: " By your establishing by cable (within three days) an approved irrevocable Letter of Credit at 4 months Sight in favor of S. Nagasaku, Yokohama, Japan, negotiable against documents.  Letter of Credit to expire September 25th, 1930."  The contract further provided:  " These goods are bought with the understanding that the title to same shall not pass until the goods are paid for in full."  Pursuant to the provisions of the contract the defendants, who were engaged in the business of importing and merchandising skins and have their office in the city of New York, applied to the Bank of United States for the letter of credit, which was issued on September 12, 1930, by that bank. S. Nagasaku shipped the goods ordered by defendants on or about September 20, 1930, insuring them, paying the freight and obtained a bill of lading for the rabbit skins.  Plaintiff's assignor drew his draft for $6,300 upon the Bank of United States and on the same day said draft, with documents attached, was purchased by plaintiff, plaintiff paying Nagasaku the full amount of the draft.  Plaintiff forwarded the draft, with documents attached, to the Bank of United States, which accepted it on or about October 9, 1930. The documents of title and, later, the goods themselves were received by defendants under a trust receipt delivered to the bank. Before February 9, 1931, the date when the draft became due, the Bank of United States was taken over by the Superintendent of Banks and the draft was not paid at its maturity.  S. Nagasaku, on March 4, 1932, assigned to plaintiff all his right, title and interest in the money due from defendants on account of said contract, and on the same day plaintiff brought the present action.

In the answer the defendants deny knowledge or information of the negotiation of the draft to plaintiff and of the assignment. The answer also denies that S. Nagasaku performed all the conditions precedent, and denies that the goods were unpaid for.  As a separate defense of payment the answer alleges the terms of the contract, the issuance of the letter of credit, the drawing of the

draft thereunder, the sale of the draft to plaintiff, and the acceptance thereof by the Bank of United States.

The affidavit of Irving Schild, one of the defendant copartners, read in opposition to plaintiff's motion for summary judgment, sets forth substantially the same facts as are alleged in the answer. In this affidavit the provision of the contract of sale that " these goods are bought with the understanding that the title to same shall not pass until the goods are paid for in full," is set forth. Said affidavit further states that no demand has ever been made by the seller for the return of the goods, or that defendants have improperly received the same on the ground that title had not passed to them.

The appellant contends that the answer and the affidavit in support thereof do not present any issue to be tried. The court at Special Term held otherwise. The question presented upon this appeal is whether the facts set forth in the answer of defendants and in the affidavit of defendant Schild are sufficient to present the issue that Nagasaku, the seller of the goods, had received payment therefor, and that plaintiff, in March, 1932, took nothing by its purported assignment of the seller's right, title and interest in the money due from defendants. It seems to us that under the terms of the contract as to the manner of payment for the goods and the retention of title until the same had been paid in full, coupled with the drawing of the draft, its discounting, and the unconditional delivery of the merchandise by the seller, evidenced the fact that the parties intended that the seller should receive the acceptance of the Bank of United States in payment for the goods. The contract expressly states how payment should be made, to wit, by the establishing of an approved irrevocable letter of credit in favor of the seller negotiable against documents. The law seems to be fairly well settled that where a buyer of merchandise procures, at the instance of the seller, the obligation of a third party agreed to be accepted in payment, and such obligation is accepted by the seller as payment for the goods sold, the obligation of the buyer is discharged. (*Wise* v. *Chase*, 44 N. Y. 337; *Gibson* v. *Tobey*, 46 id. 637.) In the latter case the buyer of a quantity of hogs procured, at the request of the seller, a draft drawn on a third party, payable to the seller's order. The hogs had previously been delivered to the buyer. The draft was later dishonored and the seller sued the buyer for the purchase price of the goods, having first unsuccessfully offered to deliver up the draft upon payment of the purchase price. The question was tried out before a referee, who held as a matter of law that the price was unpaid and that the draft was not a satisfaction of the purchase price of the hogs. The Court of Appeals reversed the decision of the referee. The

Court of Appeals said that the sale was for cash, and that the delivery was impliedly, if not expressly, made conditional upon payment. The Court of Appeals (at p. 642) stated: " The presumption of law that the draft was received as payment therefore applies, and the plaintiff cannot maintain the action." At page 643 the Court of Appeals further said: " For the purposes of this question the transaction is the same as if it had all taken place at the same time, and in construing it we must observe the rule applicable to all contracts, that the intent of the parties is to be effectuated. If the plaintiff had not intended to have received the draft in payment he would have said so, or required an indorsement. (*Darnell* v. *Morehouse,* Court of Appeals, not reported.) And when a creditor has an option to receive money or a note of a third party, and he accepts the latter, it will be presumed that he receives it with the same effect as if he had received the money. (*St. John* v. *Purdy,* 1 Sand., S. C. R., 9 [3 N. Y. Super. Ct.].)" (See, also, *Hall* v. *Stevens,* 116 N. Y. 201.) In the case last mentioned the seller of some cattle accepted a bank draft in payment therefor. The draft was deposited for collection and dishonored due to the insolvency of the bank upon which it was drawn. Action was brought to recover the price and plaintiff asked to go to the jury on the question whether the draft had been received in payment. The trial court refused such request and directed a verdict for defendants. The Court of Appeals held that such direction was proper. At pages 205 and 206 the Court of Appeals said: " If it had been a part of the original agreement between the parties that the plaintiff should take a draft in payment for his cattle, that would have been conclusive and would have left no question for discussion." In the case at bar the agreement was that payment should be effected by obtaining an approved irrevocable letter of credit. The approval of the letter of credit obtained is evidenced by the fact that it was accepted by the seller in payment, indorsed over to plaintiff, which in turn drew a draft thereon for the amount of the purchase price of the rabbit skins, and which draft was accepted by the drawee bank. (See, also, *Dibble* v. *Richardson,* 171 N. Y. 131, 138.) The Court of Appeals by the decisions mentioned held that the obligation of a third party procured by the buyer and accepted by the seller as a part of the transaction by which it was created is presumably accepted as payment and in discharge of the buyer's obligation. In the instant case the goods were surrendered by the seller when the draft was drawn and discounted. The contract provided that title should not pass until the goods were paid for in full. Therefore, the facts here present a question as to whether the parties intended that the obtaining of the approved irrevocable letter of

credit should be in full payment for the goods. The court properly denied plaintiff's motion for summary judgment, and that sufficient facts were set forth in the answer and answering affidavit to present an issue for determination at the trial.

The order appealed from should be affirmed, with ten dollars costs and disbursements to defendants, respondents, against plaintiff, appellant.

FINCH, P. J., McAVOY and TOWNLEY, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.