## The Grand Tower and Cape Girardeau Railroad Company

*v.*

## Serena A. Walton.

*Filed at Mt. Vernon June 19, 1894.*

1. Eminent domain—*a proceeding at law.* Where a railroad company is authorized to take private property for a public use under its charter, the mode of procedure is laid down in our statute entitled "Eminent Domain." The proceeding is one at law, and not in equity.

2. Same—*ascertaining damages—under a cross-bill.* While it may be true that a court of equity has no jurisdiction to determine the compensation to be paid for lands proposed to be taken for railroad purposes where a bill is filed for that purpose alone, yet where the land owner has been brought into a court of equity by a railroad company after it has taken and appropriated the lands for its purposes, and it prays for a decree requiring the land owner to convey the lands thus taken, the latter may insist upon being paid for the land taken and damaged, and ask the court, by cross-bill, to have the amount ascertained and determined by a jury to be selected for that purpose.

3. Specific performance—*contract for a deed for a right of way— cross-bill charging fraud.* Where a railway company has a valid contract for a deed for its right of way, a court of equity is the appropriate tribunal to decree a deed in pursuance of the contract. And when such relief is sought by an original bill, the land owner may file his cross-bill, charging fraud in procuring the agreement upon which the company seeks a decree of specific performance.

4. Where an agreement to convey a strip of land for a railroad right of way over certain lands, fixing no definite line, was procured to be executed upon the representations and promises of the agents of the road that the road should be located along a definite and fixed line and along the bank of a slough, and after the agreement to release the right of way the promises and representations were disregarded and the road was built on a different route, it was *held,* that, owing to the fraud practiced by the railway company, a court of equity would not decree specific performance of the agreement, and that a cross-bill setting up fraud was not without equity.

5. Chancery—*jurisdiction for one purpose—retained for all purposes.* Where a cross-bill is filed in a suit for the specific performance of a contract to make a deed, and the defendant files his cross-bill charging that the contract was procured by fraud and false promises and representations, this will clothe the court of equity with authority to

adjudicate upon these matters; and such court will have the right, if necessary, to do complete justice between the parties, and to settle and determine legal as well as equitable rights. In other words, when equity acquires jurisdiction it will retain the case, and settle all questions incident to the relief sought by the bill.

6. JURISDICTION—*courts of law and equity.* It is a familiar rule that courts of equity have concurrent jurisdiction with courts of law on questions of fraud, and the court which first acquires jurisdiction will retain it until the litigation is finished:

7. EVIDENCE—*impeaching written contract—admissibility of parol evidence.* Where parties have reduced their contract to writing, the rule is well settled that parol evidence is not admissible to vary or change the terms of the contract, but where it is sought to impeach a written contract for fraud, in a court of equity, parol evidence is admissible for that purpose.

APPEAL from the Circuit Court of Union county; the Hon. JOSEPH P. ROBERTS, Judge, presiding.

Serena A. Walton, appellee, commenced an action at law in the circuit court of Union county, against the Grand Tower and Cape Girardeau Railroad Company, to recover damages resulting to her in consequence of the construction of the railroad over and across certain lands owned by her in Union county. After summons was served, the railroad company filed a bill in equity against the plaintiff in the action, for an injunction to enjoin the prosecution of the action, and also set up the execution of the following contract by Serena A. Walton for the right of way, and asked for a specific performance thereof:

"WHEREAS, the Grand Tower and Cape Girardeau Railroad Company has been organized, and intends to construct a railroad from opposite Cape Girardeau to Grand Tower, through the counties of Alexander, Union and Jackson, State of Illinois:

"*This contract witnesseth,* that in consideration of one dollar, the receipt of which is hereby acknowledged, and in further consideration of the benefits that will accrue to me by reason of the construction of said contemplated railroad, I

hereby agree, contract, covenant and bind myself to make to said company, after the construction of said railroad has been begun, a deed for the right of way one hundred feet wide, the middle thereof to be the center of the main track of said railroad, over, across and through the following described land, lying in the county of Union, in the State of Illinois, to-wit: South-west quarter of section twenty-five (25), and the south-east quarter of section twenty-six (26), and the north-east quarter of section thirty-five (35), all in township thirteen (13), south, range three (3), west, all of which is in Union county, Illinois; with power to take all necessary ground, rock and dirt off and from said right of way, to build embankments and turn-outs: *Provided, however,* that if the work of constructing said railroad between East Cape Girardeau and Grand Tower is not begun and carried on in good faith on or before May 1, 1889, and said railroad finished within one year, this contract to grant the right of way to be utterly null and void. I further agree and contract that the agents, servants and contractors of said company, employed to build said railroad, may enter upon the right of way hereby granted to begin work to construct the said railroad, although the deed to right of way is not made, as fully as if the deed had been made."

Serena A. Walton put in an answer to the bill, in which she admitted the execution of the agreement set out in the bill. The answer also contained the following: "But this defendant expressly avers, and states the fact to be, that the said agreement was entered into by her, and that she was induced to sign said agreement, by and through the fraud and misrepresentations of the complainant and its agents, in this, to-wit, that at the time and before the signing of said contract it was expressly understood and stipulated and promised by the complainant and its agents that said railroad right of way mentioned in the agreement was to be located upon the east bank of a slough known as Dry or Big slough, traversing the

described lands in a northerly and southerly direction, said right of way to be upon the east bank of said slough where the right of way intersects the southern line of the defendant's said lands, and to be upon the east bank of said slough, not more than fifty feet from the center thereof with the west line of said right of way, said right of way extending in a northerly direction on the east bank of said slough, with the salient points thereof, and leaving defendant's lands at the north side thereof at a point west of the house thereon situated, near the east bank of said slough. This defendant, further answering, denies that the complainant began and carried on the work of constructing the said railroad in pursuance of the terms of the said agreement, in good faith, or that it has in any respect complied with the terms of said agreement, but, on the contrary, states the fact to be that the said complainant, in direct violation of the agreement and understanding, did build and construct said railroad and locate its said right of way far to the east of said east bank, to-wit, a distance of two hundred feet to five hundred feet, in the middle of, or near the middle of, defendant's said lands. This defendant denies that said railroad is built upon and across the land agreed to be conveyed by the defendant, and also denies that the complainant is entitled to a deed for said right of way under said agreement. This defendant admits that she has refused to make a deed to said right of way as described in complainant's bill, and admits that she has brought a suit at law in this court, suing for damages and for the value of the land described in complainant's bill.

The defendant, Serena A. Walton, also filed a cross-bill, in which she set up the same facts contained in the answer, and also that she had forbidden said company and its agents to proceed with the work as it progressed, and praying as relief that the said agreement be declared null and void, and that the court decree payment for the land taken and damaged. The cross-bill also prayed for general relief.

At the request of the complainant in the cross-bill the following questions of fact were ordered by the court submitted for trial by jury: First, did the defendant in the cross-bill, at the time it secured the right of way over complainant's land, promise the complainant, and agree with her, to build its road on the east bank of Dry slough; second, did the defendant in the cross-bill build its road over complainant's land where it promised to build it; third, what was the value of the land actually taken by said defendant; fourth, what was the damage to complainant's land over and above the benefits, if any.

To the first question the jury answered, Yes; to the second they answered, No. The value of the land taken they found to be $520. The damage to the lands, over and above the benefits, they found to be $775. The jury also returned, in answer to a question as to the amount of land actually taken by the railroad, that the number of acres was $13\frac{4}{100}$.

Upon the return of the verdict the court entered a decree, in effect, that the equities of the case are not with the complainant in the original bill, and they are with the complainant in the cross-bill; that the original bill be dismissed; that the complainant in the cross-bill recover from said railroad company the sum of $1295 and costs of suit, and that execution issue therefor; that on payment in full of said amount, the title in fee simple to a tract of land one hundred feet wide, the center being the center of the railroad track across the south-west quarter of section 25, the south-east quarter of section 26, and the north-east quarter of section 35, township 13, south, range 3, west of the third principal meridian, vest in said defendant, its grantees and successors.

Mr. ISAAC CLEMENTS, Mr. F. M. YOUNGBLOOD, and Mr. W. W. BARR, for the appellant:

In a chancery proceeding the relief sought must be equitable relief, and this must appear on the face of the bill.

This rule applies to a cross-bill as well as to an original bill. Story's Eq. Pl. sec. 398; Cooper's Eq. Pl. 86; *Jones* v. *Smith,* 14 Ill. 229; *Quick* v. *Lemon,* 105 id. 578.

When a court of equity once acquires jurisdiction it will retain the case, and give complete justice between the parties. But the legal relief must be incidental to the equitable relief sought in the same bill. Story's Eq. Jur. sec. 74 b; *Tunesma* v. *Schuttler,* 114 Ill. 156; *Robinson* v. *Appleton,* 124 id. 276.

If the equitable relief fails, the legal relief must fail with it. It can only be re-adjusted as an incident to the principal relief sought—the equitable relief. *Daniel* v. *Green,* 42 Ill. 471; *Green* v. *Spring,* 43 id. 280; *County of Cook* v. *Davis,* 143 id. 151.

A false representation, within the meaning of the law, must be as to a past or present state of facts,—not merely as to an intention as to the future. Kerr on Fraud and Mistake, 88; Fry on Specific Per. sec. 101; *Haenni* v. *Bleisch,* 146 Ill. 262; *Gallaher* v. *Brunell,* 6 Conn. 346.

It is a general rule that parol evidence can not be admitted to contradict, add to, subtract from or vary the terms of a written contract. 1 Greenleaf on Evidence, sec. 275; 2 Phillips on Evidence, 637; *Lighthall* v. *Colwell,* 56 Ill. 108; *Gibbons* v. *Bressler,* 61 id. 110; *Packard* v. *Van Schoick,* 58 id. 79; *Strehl* v. *D'Evers,* 66 id. 77; *Tiernan* v. *Granger,* 65 id. 351; *Coey* v. *Lehman,* 79 id. 173; *Fowler* v. *Black,* 136 id. 363.

Mr. TAYLOR DODD, and Messrs. KARRAKER & LINGLE, for the appellee:

The cross-bill, expressly and in substance, charges fraud. Courts of equity and law have concurrent jurisdiction of fraud. Where a court of equity has concurrent jurisdiction with a court of law, the court which first acquires jurisdiction must hold and exercise it until the litigation is ended. *Whitney* v. *Stevens,* 97 Ill. 482.

Appellant now argues that the court had no jurisdiction, upon the ground that there is a complete remedy at law. The record shows that the merits of the cross-bill were put in issue by answer, and a trial had thereon. Where respondents to a bill answer to the merits and submit to the jurisdiction of the court, they can not afterward raise the question of jurisdiction. *Schmol* v. *Fiddick,* 34 Ill. App. 199.

Except in cases where the subject matter is wholly foreign to the jurisdiction of a court of equity, the objection that there is an adequate remedy at law must be raised and urged in the court below, or it will be considered as waived. *Comstock* v. *Henneberry,* 66 Ill. 212.

The general rule that equity will not grant relief in cases in which the party has a complete remedy at law, has its exceptions in cases of concurrent jurisdiction, in fraud and imposition. Something more than the bare fact that there is a remedy at law is required. The remedy at law must not only appear clear, and not doubtful or difficult, but the remedy there must be as effectual as in equity. *Frazier* v. *Miller,* 16 Ill. 48; *Oard* v. *Oard,* 59 id. 46.

Legal rights may be cognizable in equity. If there are equitable conditions authorizing the court to act, it will, to do complete justice, enforce legal as well as equitable rights. *Tunesma* v. *Schuttler,* 114 Ill. 163.

Equity acquiring jurisdiction, retains the case to settle all questions incident to the principal relief sought, (*Robinson* v. *Appleton,* 124 Ill. 281,) or for all purposes germane to the subject matter of the original bill, although some such matters have ceased to be in contention. *Hurd* v. *Ascherman,* 117 Ill. 504.

A court of equity having acquired jurisdiction for one purpose will entertain it for all purposes. *Pratt* v. *Kendig,* 128 Ill. 302.

When fraud is charged in procuring the execution of a written contract, parol evidence is admissible. *Renshaw* v. *Gauz,*

7 Pa. St. 117; *Murray* v. *Duke*, 46 Cal. 644; *Neil* v. *Speigle*,
33 Ark. 63; *Razor* v. *Razor*, 39 Ill. App. 529; 2 Wharton on
Evidence, sec. 1026; 2 Taylor on Evidence, sec. 1028.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

It is first claimed by the railroad company that the court
had no jurisdiction to grant the relief sought by the cross-
bill,—that the remedy is cognizable only at law.    Where a
railroad company is authorized to take private property for a
public use, under its charter, the mode of procedure is laid
down in our statute entitled "Eminent Domain."    Under that
statute private property can not be taken or damaged without
just compensation.    Such compensation is required to be as-
certained by a jury.    Where the parties can not agree upon
the amount to be paid, the party authorized to take private
property is required to apply to the judge of the circuit or
county court, either in vacation or term time, by petition, set-
ting forth his or her authority in the premises, the purpose
for which said property is sought to be taken or damaged, a
description of the property, the names of all persons interested
therein, etc.    The statute provides for service of process, and
for calling a jury, before whom the question of just compen-
sation shall be tried.    The proceeding authorized is one at law.
In this case, as has been seen, the amount the land owner was
entitled to recover was determined in equity.    In the first
place, however, the land owner brought an action at law, but
the defendant in that action, the railroad company, filed a
bill in equity to enjoin its prosecution, and prayed for a spe-
cific performance of an alleged agreement, in which the land
owner had agreed, upon certain terms and conditions, to con-
vey the right of way.    The jurisdiction of a court of equity
was thus invoked by the railroad company.    It sought a de-
cree compelling the land owner to convey to it the right of
way over certain lands owned by her, which the railroad com-
pany had taken for its right of way.

While it may be true that a court of equity has no jurisdiction to determine the compensation to be paid for lands proposed to be taken for railroad purposes where a bill has been filed for that purpose alone, yet where the land owner has been brought into a court of equity by the railroad company after it has taken and appropriated the lands for railroad purposes, and it prays for a decree requiring the land owner to convey the lands thus taken, may not the land owner insist upon being paid for the land taken and damaged, and ask the court, by cross-bill, to have the amount ascertained and determined, as was done here?

The cross-bill, in express terms, charged the complainant in the original bill with fraud in procuring the agreement upon which it predicated its bill for a specific performance. It is a familiar rule that courts of equity have concurrent jurisdiction with courts of law on questions of fraud, and the court which first acquires jurisdiction will retain it until the litigation is finished. If, therefore, the agreement was procured by fraud, no reason is perceived why a court of equity might not investigate that question, and grant such relief as the equity of the transaction demanded. So, also, if the complainant, the railroad company, held a valid contract for a deed for the right of way, a court of equity was the appropriate tribunal to decree a deed in pursuance of the contract. Thus it appears that a court of equity had jurisdiction of the relief prayed for in the bill, and it also had jurisdiction of the question of fraud presented by the cross-bill. Being clothed with authority to adjudicate upon these matters, the court had the right, if necessary, to do complete justice between the parties, and to settle and determine legal as well as equitable rights, as held in *Tunesma* v. *Schuttler,* 114 Ill. 164.

The rule seems to be well established that where equity acquires jurisdiction it will retain the case, and settle all questions incident to the relief sought in the bill. *Stickney* v. *Goudy,* 132 Ill. 213, is a case in point. It is there said:

"Where a court of equity has jurisdiction over a cause for any purpose, it may retain the cause for all purposes, and proceed to a final determination of all the matters at issue. For this reason, if the controversy contains any equitable feature, or requires any purely equitable relief which would belong to the exclusive jurisdiction, or involves any matter pertaining to the concurrent jurisdiction, by means of which a court of equity would acquire, as it were, a partial cognizance of it, the court may go on to a complete adjudication, and may thus establish purely legal remedies, which would otherwise be beyond the scope of its authority."

But it is claimed that appellee was not entitled to equitable relief, and a failure to establish equitable relief precluded a recovery of compensation for the land taken. It will be remembered that the contract signed by appellee, in which she agreed to convey the right of way, is silent in regard to the land upon which the road should be constructed, and appellee claims that a definite line was agreed upon between her and the agent of the railroad company before she signed the agreement, and the road was to be located on that line, and that the agreement for a release of the right of way was executed on the faith of that agreement. It appears that there was a slough, known as "Dry Slough," running through appellee's lands, and appellee's son, who was in charge of her lands at the time, desired the road to be located on the banks of that slough. Winstead D. Walton testified that he had charge of the land. In February, 1889, he met Captain Nesmith, assistant engineer, and others, to confer about the right of way. At that time a preliminary survey had been made. He testified: "I knew where it ran. I told them then, that in order to get the right of way they would have to be on the bank of the slough when they struck our farm from the south side, and keep the slough bank, and go out west of the house, at the north side of the farm. The engineer, Captain Nesmith, said that he knew exactly where I meant, and it was just about

as good a location for the road and much better for the farm. We agreed to meet up here at town the next day and give them the right of way, with the understanding that they would make that change.  I had a conversation with my mother before she signed the agreement.  I told her that they had agreed to place the road on the bank of the slough, where I wanted it, and repeated to her what the captain said about that being the place for the road."

Mrs. S. A. Walton testified:  "I asked him (Nesmith) who represented the company, and who would be responsible for where the road went.  Nesmith said he was.  I told him I would not sign it if he did not put it where Winstead wanted it.  Nesmith promised to put it where Winstead wanted it. I wouldn't have signed it if he had not promised it.  Nesmith knew where the road was to go,—we all understood it.  He said that there's where they would put it, because it would be as much to their advantage as mine.  I did not give my consent to the company to locate the road where they did.  My consent was only for it to go up the slough."

Edward B. Walton testified:  "Was present when my mother signed the agreement.  Nesmith said it was to be up the slough bank, fifty feet from the center of the slough, or about that.  A survey had been made and Nesmith had a plat with him.  It showed the line out in the field, but he (Nesmith) said that did not make any difference about where it showed it, but said they would go up the slough bank."

There is other evidence in the record bearing on this question.  Nesmith, the assistant engineer, who was acting for the railroad company, confirms the evidence of appellee and her sons.  Among other things he testified:  "Was detailed to go with citizens' committee to assist in procuring right of way.  With them visited the complainant.  The preliminary survey had been made at that time, and think the plat was shown her.  The complainant wished the line of the road to be as nearly on the bank of the slough as possible, and I told

her that I was instructed to change the line, keeping as near the Dry slough as possible without using reverse curves."

From the evidence it is plain that appellee executed the agreement to release the right of way with the understanding and upon the express agreement of the railway company that the line of road should be changed, and that it should be located through her farm on the banks of the Dry slough, but after the written release was obtained the promises and agreement upon which it was obtained were disregarded, and the road was constructed on a different route, and the railroad company now seeks in a court of equity to compel the execution of a deed conveying the right of way for lands appellee never agreed to convey. The agreement for the right of way was obtained upon the express representation of Nesmith, the agent of the railroad company that the line of the road would be changed so that it would conform to her wishes, and be located along the line of the Dry slough. If this representation had not been made the release would not have been executed. The engineer testified that it would have been better engineering to have placed the road as nearly on the bank of the slough as possible without using reverse curves. This was not, however, done, and the evidence would seem to justify the conclusion that the railroad company did not intend to perform its agreement to change the location of the road at the time it was made. There is some evidence in the record that the route along the slough was impracticable, but the testimony of Nesmith in this regard is not overcome.

It is, however, claimed, that the representation made to appellee establishes only a failure of intention on the part of the railway company to make the change of route, and it is said a representation, although it may be false as to a matter of intention, does not constitute fraud, and in support of this position we are referred to Kerr on Fraud and Mistake, page 88, where the author says: "As distinguished from a false representation of a fact, the false representation as to a mat-

ter of intention not amounting to a matter of fact, though it may have influenced a transaction, is not a fraud at law, nor does it afford grounds for relief in equity." It is, however, plain that the representations here involved do not fall within the rule here indicated by the author. Here was an agreement to locate the road at a definite specified place on the part of the railroad company. It was not a mere statement of an intention to do an act in the future, but a contract to change the location, in consideration of which the appellee agreed to give the right of way.

It is also claimed that parol evidence was not admissible to vary or change the terms of the written contract executed by appellee. Where parties have reduced their contract to writing, the rule is well established that parol evidence is not admissible to vary or change the terms of the contract. But this rule of evidence has no application here. Where it is sought to impeach a written contract for fraud, in a court of equity, parol evidence is admissible for that purpose. (*Van-Buskirk* v. *Day*, 32 Ill. 260 ; *Race* v. *Weston*, 86 id. 92 ; *Wilson* v. *Hæcker*, 85 id. 352.) This rule is well established.

Complaint is also made in regard to the amount of damages recovered by appellee, but upon an examination of the record we find the decree sustained by the evidence. Indeed, under the evidence a much larger amount might have been found by the jury. Moreover, the theory upon which the damages were assessed was so favorable to appellant that it is in no position to complain. The court held, and on this theory the damages were awarded, that inasmuch as appellee had given the railroad company the right of way over her lands on a certain line, and the company having selected a different route, appellee was only entitled to recover the difference in damages, if any, between the two routes.

The decree of the circuit court will be affirmed.

*Decree affirmed.*