(No. 12873.—Judgment affirmed.)

FANNY LACY HAWLEY, Exrx. Appellant, vs. THE ÆTNA·
LIFE INSURANCE COMPANY et al. Appellees.

*Opinion filed December 17, 1919—Rehearing denied Feb. 4, 1920.*

1. INSURANCE—*one cannot insure a life in which he has no interest.* One having no insurable interest in the life of another can not procure a policy of insurance on such life, and the policy so procured is void at its inception.

2. SAME—*one may insure his own life and select any beneficiary.* One may insure his own life for the benefit of another having no insurable interest therein.

3. SAME—*one who has insured his own life may assign his policy to one who has no insurable interest.* One who has insured his own life may in good faith, by an assignment of the policy, provide for the payment of the insurance money to an assignee who has no insurable interest in the life insured.

APPEAL from the First Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

WILLIAM G. WISE, and WORTH E. CAYLOR, for appellant.

JOHN M. CURRAN, (HERMAN W. STILLMAN, of counsel,) for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

The prayer of a bill filed in the circuit court of Cook county to set aside an assignment of a life insurance policy was allowed by said court and a decree entered in accordance therewith. On appeal to the Appellate Court the decree of the circuit court was reversed, with directions to dismiss the bill for want of equity. The Appellate Court granted a certificate of importance, stating that the questions of law involved justified the same. This appeal followed.

On June 30, 1893, George F. Hawley, a physician re-
siding in Chicago, took out a policy of insurance on his
own life in the Ætna Life Insurance Company for $10,000,
in which his first wife was named as the beneficiary.    On
January 4, 1900, the wife having previously died, his daugh-
ter was named as beneficiary, and on June 14, 1912, the
insured again changed the beneficiary from his daughter,
who was then married, to his executors, administrators or
assigns.    On June 22, 1912, the policy was duly assigned
by the insured to Frank .C. Crittenden, who had no insur-
able interest in the policyholder's life, for $2500, and said
assignee assumed the payments of the future premiums.    At
the time the policy was first made out Dr. Hawley was a
practicing physician residing in Chicago, forty-nine years
of age.    The premium on the policy was then $315.90, sub-
ject to change every ten years, depending upon the surplus
earnings of the company.    During the nineteen years before
the assignment of the policy to Crittenden Dr. Hawley paid
the premiums.    At the time of the assignment he was sixty-
eight years of age, and his life expectancy, based on actu-
aries' tables, was 9.47 years.    At that time he was not in
very good health, having heart trouble.    He was also in
June, 1912, pressed for ready money with which to pay
real estate assessments on certain property that he owned,
and his annual premium on this life insurance policy was
falling due the last part of that month.    He therefore de-
cided to sell the policy, if possible, to the best advantage,
and inquired of the Ætna Life Insurance Company the cash
surrender value.    He learned in some way that he could get
$2000 from some person in the company's office but could
not get a cash surrender value from the company.    He then
advised with one of his office associates, Dr. Pratt, with ref-
erence to investigating the value, explaining that his daugh-
ter was married to a young man of decidedly good prospects
and that there was no reason why he should carry the pol-
icy any longer; that the premiums were hard to meet and

would probably be increased shortly, and he did not feel called upon to sacrifice himself to any great extent. He finally told Dr. Pratt that he would sell the policy for $2500. The evidence shows that the cash surrender value of the policy amounted to $2040.40, although the evidence tends strongly to show that Dr. Hawley did not know that the company itself would pay the cash surrender value, and the understanding between him and Dr. Pratt was that Dr. Pratt was to inquire of a friend in the life insurance business as to the salable value of the policy. After some investigation Crittenden told Dr. Pratt that he would pay $2500 cash for an assignment of the policy and assume the payment of the premiums thereafter. The $2500 cash was paid, an assignment made, and the premiums thereafter during Dr. Hawley's life were paid by Crittenden. Dr. Hawley's death took place in Chicago on April 16, 1917. Notice of the assignment was given, shortly after it was made, to the Ætna Life Insurance Company. Dr. Hawley was married to appellant in 1911, a year prior to the assignment of the policy. He practiced his profession for some time thereafter, giving it up on account of ill-health shortly before his death. After his death Crittenden filed proofs with the insurance company, and thereafter, before the payment of the policy to Crittenden, appellant, as executrix of Dr. Hawley's will, filed the bill in this proceeding.

The principal question involved herein is whether the holder of a policy of life insurance has the right to assign the same by an absolute sale to a stranger having no insurable interest in the life of the insured. The record shows that the policy in question was procured by Dr. Hawley in good faith and that the assignment was also made in good faith, free from any fraud or deceit. The courts have uniformly held that one having no insurable interest in the life of another cannot procure a policy of insurance on such life, and the policy so procured is void at its inception. (*Guardian Mutual Life Ins. Co.* v. *Hogan,* 80 Ill. 35; *Golden Rule*

v. *People,* 118 id. 492; *Connecticut Mutual Life Ins. Co.*
v. *Schafer,* 94 U. S. 457; *Warnock* v. *Davis,* 104 id. 775;
3 Am. & Eng. Ency. of Law,—2d ed.—929.) This court ·
has also held that one may insure his own life for the bene-
fit of another having no insurable interest therein. (*Bloom-
ington Benefit Ass'n* v. *Blue,* 120 Ill. 121.) The doctrine
on this point in the last case has been quoted with approval
by this court at various times and has never been in any
way modified or overruled. It has also been held by this
court that while it is the general rule that no person can
procure a valid insurance on the life of another unless he
has an insurable interest in such life, "yet the rule seems
to be that a person having insured his own life, may by an
assignment of the policy provide for the payment of the
insurance money to an assignee who has no insurable inter-
est in his life." (*Martin* v. *Stubbings,* 126 Ill. 387.) The
doctrine in both these cases has been quoted with approval
by this court as late as the case of *Stake* v. *Stake,* 228 Ill.
630. "The tendency in business life has been to liberalize
the rules governing life insurance and thus to broaden its
scope. It was found desirable that life insurance policies
should pass freely by transfer and assignment, and so long
as this was with the consent of the parties it was felt that
the objections on the ground of public policy were largely
illusory. Thus a more liberal rule has been adopted in many
States, where it is held that a policy supported by an inter-
est at its inception is a mere chose in action, which may
be assigned to a person who had no insurance interest in
the life." (Elliott on Insurance,—1907,—sec. 63.) This
author includes Illinois as one of the States that has adopted
a more liberal rule and quotes the Illinois decisions cited
above as laying down such rule. The same doctrine is laid
down by the United States Supreme Court in *Grigsby* v.
*Russell,* 222 U. S. 149, where the court discussed its for-
mer decisions on this question and said (p. 154): "The
ground suggested for denying the validity of an assignment

to a person having no interest in the life insured is the public policy that refuses to allow insurance to be taken out by such persons in the first place. A contract of insurance upon a life in which the insured has no interest is a pure wager that gives the insured a sinister counter-interest in having the life come to an end, and although that counter-interest always exists, * * * the chance that in some cases it may prove a sufficient motive for crime is greatly enhanced if the whole world of the unscrupulous are free to bet on what life they choose. The very meaning of an insurance interest is an interest in having the life continue, and so one that is opposed to crime; and, what perhaps is more important, the existence of such an interest makes a roughly-selected class of persons who by their general relations with the person whose life is insured are less likely than criminals at large to attempt to compass his death." The opinion then goes on to state that in case of the assignment of a policy taken out in good faith there is no question as to the character of the original contract, and that, this being so, "not only does the objection to wagers disappear, but also the principle of public policy referred to,—at least in its most convincing form. * * * Obviously it is a very different thing from granting such a general license, to allow the holder of a valid insurance upon his own life to transfer it to one whom he, the party most concerned, is not afraid to trust. The law has no universal cynic fear of the temptation opened by a pecuniary benefit accruing upon a death. * * * Life insurance has become in our days one of the best recognized forms of investment and self-compelled saving. So far as reasonable safety permits, it is desirable to give to life policies the ordinary characteristics of property." It was there held that a policy taken out in good faith could thereafter be assigned to one who had no insurable interest.

In discussing the difference between the cases in which the policy was procured by a person who had no insurable

interest in the life of the person insured, thus making a wager contract, and the cases where a policy was procured in good faith by the person himself to be assigned thereafter, one author has said: "The true line of distinction is the activity and responsibility of the assured and not the interest of the person entitled to the funds. It is well established that a man may take out a policy on his own life, payable to any person he pleases, and it is drawing a distinction without a difference to hold that he cannot take out a policy and afterward transfer its benefits." (2 May on Insurance,—4th ed.—sec. 398a.) Another author in discussing this question, after stating that there is not entire unanimity in the decisions with reference to this subject, states: "The weight of authority sustains the proposition that if a person effects a valid insurance upon his own life and the transaction is *bona fide* and not intended to circumvent the law, the assignment to another will be upheld even though the assignee has no insurable interest in the life insured." (2 Joyce on Insurance,—2d ed.—sec. 918, and cases there cited.)

Counsel for appellant argue earnestly that public policy should require that the policy could not be legally assigned under the circumstances shown on this record. We cannot so hold. There can be no question on this record that Dr. Hawley could have received for his policy on a cash surrender, from the company, $2040.40. We can see no reasonable basis for public policy forbidding the owner of the insurance policy to sell it and assign it to anyone who would pay more than the cash surrender value which the company was willing to pay. To sustain the doctrine of counsel for appellant on this point would be, in effect, to hold that a valid policy cannot be sold in the best market but must be either surrendered to the company or sold to a person having an insurable interest, and this would in most cases result in compelling the policyholder to surrender his policy to the insuring company at its own figure. This, it seems

291—3

to us, is contrary to sound public policy, and is not only contrary to the former decisions of this court but is not in accord with the weight of authority in other jurisdictions, including the latest decision of the Federal Supreme Court.

The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*