**OBARTUCH v. SECURITY MUT. LIFE INS. CO.**

No. 7059.

Circuit Court of Appeals, Seventh Circuit.

April 12, 1940.

Rehearing Denied Aug. 14, 1940.

Charles S. Deneen, Roy Massena, and Donald N. Schaffer, all of Chicago, Ill., for appellant.

Dwight S. Bobb and William L. Bourland, both of Chicago, Ill. (Bobb, Spoerri, Bourland & Harris and Thomas J. Barnett, all of Chicago, Ill., of counsel), for appellee.

Before EVANS, MAJOR, and TREANOR, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a judgment in favor of the defendant, entered April 14, 1939, in an action to recover upon two policies of life insurance, one dated July 18, 1931, and the other July 27, 1931, each in the sum of $10,000, issued upon the life of Frank Obartuch, and in each of which Julia Obartuch, plaintiff and wife of the insured, was named as beneficiary. The complaint was in the usual form with the policies set forth haec verba, including the incontestable clause.[1] The prayer for a summary judgment was supported by the affidavit of the plaintiff in accordance with the Illinois Practice Act, Ill.Rev.Stat.1939, c. 110, § 125 et seq.

The defendant's answer admitted the execution and issuance of the policies, the death of Frank Obartuch, the payment of all premiums due on said policies and, that said policies had been in full force and effect for more than two years; but denied that the sum demanded was due or that the plaintiff was entitled to any payment from defendant except $4,855.60, the amount of premiums paid, for the reasons, (1) the application therefor was void as (a) either Frank Obartuch did not sign or authorize anyone to sign said application, or (b) Frank Obartuch did not knowingly sign said application, and (2) some person unknown to the defendant was fraudulently substituted for Frank Obartuch at the medical examination. The answer further alleged that the defendant, on March 14, 1935, notified the plaintiff of its election to rescind said policies on account of fraud, and tendered the amount of the premiums paid thereon to Michael and Henry Obartuch, sons of the alleged insured, who had paid said premiums, which tender was refused.

The cause was tried by the court without a jury and plaintiff's motions for a summary judgment, first on the pleadings, second, at the conclusion of the plaintiff's case, and again at the conclusion of all the evidence, were denied. The court also refused to adopt a conclusion of law submitted by the plaintiff to the effect that the defense of fraud, including that of substitution of another person for the insured on the medical examination, was barred by the incontestable clause of the policies under the law of Illinois.

The court entered findings of fact and conclusions of law submitted by the defendant. The substance of such findings was:

1. That the policies in suit were issued upon the life of some person other than Frank Obartuch, which other person submitted to a medical examination by Dr. Rubens;

2. That if Frank Obartuch signed the insurance application and answers to questions of the medical examiner and amendments thereto, he did so, not knowing the contents of said documents or with the intention of obtaining insurance from the defendant;

3. That the policies were obtained by the plaintiff and her sons, without the knowledge or consent of Frank Obartuch, by the substitution with their knowledge of a person other than Frank Obartuch at the medical examination.

The substance of the court's conclusions of law was:

1. That it is contrary to public policy for any person to obtain life insurance by substituting an individual other than the named insured for medical examination, and a policy secured by such substitution is void;

2. That the incontestable clause in the policies in suit does not preclude the defense that the person examined by the defendant's medical examiner was not Frank Obartuch, but someone else who impersonated said Frank Obartuch.

3. That said policies did not constitute a valid contract with Frank Obartuch and, if valid at all, were contracts upon the life of the person examined by the defendant's medical examiner.

4. That there was never any valid contract of life insurance upon the life of Frank Obartuch because he never knowingly signed any application therefor or authorized any other person to sign an application for him.

---

[1] This clause provided: "Incontestability.—This Policy and the application therefor, a copy of which application is endorsed hereon or attached hereto and made a part hereof, constitute the entire contract between the parties and shall be incontestable after it has been in force during the lifetime of the insured for a period of two years from its date of issue, except for non-payment of premiums and except as stated in the clause relating to Military or Naval Service. * * *"

The contested issues upon which the plaintiff relies for a reversal are set forth in her reply brief as follows:

1. The defendant's sole defense, the alleged substitution at the medical examination of some person other than Frank Obartuch, who made and signed the application for the policies in suit, was precluded by the incontestable clause.

2. The finding that there was a substitution at the medical examination is clearly erroneous as a matter of law, for the reason that, excluding the incompetent testimony of the defendant's medical examiner, it conclusively appears that Frank Obartuch was examined for the policies issued by the defendant.

Thus, questions of law only are raised on this appeal and there seems no occasion at this point to relate even a synopsis of the testimony.

Under the first contested issue, it is the position of the plaintiff that the defendant, by statements made by its counsel at and prior to the commencement of the trial, waived all defenses alleged in its answer except the issue of substitution at the medical examination, while defendant contends to the contrary. With this contention as a basis, it is argued by the plaintiff that Finding No. 2 is erroneous as a matter of law as not being based upon an issue in the case and, that Conclusion of Law No. 4 is erroneous for the same reason. In other words, it is contended that the question as to whether the insured knowingly signed the application was not an issue before the court and, that any finding or conclusion in this respect was erroneous. Having thus eliminated the issue of signing, it is argued that the finding and conclusion of the court that some person other than the insured was submitted for the medical examination does not constitute a defense by reason of the incontestable clause of the policies. It is also argued that the finding and conclusion with reference to substitution was erroneous because of the admission of incompetent testimony.

It is defendant's contention that it waived none of the issues tendered by its answer and, that in any event, the finding and conclusion with reference to signing was proper if there was no issue before the court but that of substitution or impersonation.

We set forth in a footnote some of the colloquy between counsel and the court which plaintiff relies upon as confining the issue to that of substitution.[2]

From the statements thus made, it is somewhat confusing exactly as to the issue which was intended to be relied upon. We think, however, taken as a whole, that it is rather plain that the defendant did not intend to dispute that the genuine signature of Obartuch appeared on the application, but that he signed without knowledge of its contents. If there were any doubt in plaintiff's mind concerning the issue of signature, it must have been dispelled when, during the examination of plaintiff's first witness, the following colloquy occurred:

"Mr. Pearson: Now, I would like to ask you further, counsel: In the statement at one time you intimated there was not any question about what Mr. Obartuch signed these various papers. Is there any question about that?

"Mr. Bourland: I have never stated that. I have always said it was either a forgery

---

[2] "Mr. Obartuch: (Attorney for plaintiff) * * * They do not contend that he did not sign it, and I think under the pre-trial practice that we can eliminate that and have the one issue tried and dispose of it in that way, * * *

"The Court: Is that your understanding, that there is only one issue?

"Mr. Bourland: (for defendant) Yes, Your Honor, the only issue is whether or not they substituted a different person, and I expect to prove that they did substitute, * * *"

* * * . * * * *

In the opening statement appears the following:

"Mr. Pearson: (for plaintiff) * * * I understand now * * * that the only question in issue that they now present is the question as to whether or not there was a substitution of another person in the medical examination. * * *

"Mr. Bourland: That is right.

"Mr. Pearson: So that the question of whether the application bears Mr. Frank Obartuch's signature * * * is not now material. * * *"

* * * * * * *

In the opening statement for the defense, is the following:

"Mr. Bourland: * * * Whether it is his genuine signature or not, may or may not appear in the case, but, after all, if he was induced by some sort of skulduggery to sign the papers and did not know what he was signing * * * it still would be immaterial whether it was his signature or not; * * *"

or else he did not know what he was signing."

We therefore conclude that the issue as to signing was not waived by the defendant, but if we should be mistaken as to this, we still think findings and conclusions as to such issue were pertinent to the issue of substitution. As the trial court said, in referring to the finding and conclusion with reference to the issue of signing: "They are part of that, that makes up the substitution."

It is stated in 64 C.J., Sec. 1104, page 1257: " * * * Also, it is proper to find facts which, although outside of the issues framed, are but logical conclusions from other facts found which are directly in issue. * * * "

Assuming that all defenses were waived except that of substitution for the medical examination, as contended by plaintiff, we are of the opinion that the finding and conclusion to the effect that Obartuch, if he signed the application, did not know its contents, were relevant to such issue. It would seem too plain to admit of dispute that if Obartuch did not sign the application or did not knowingly sign it, that the person who submitted himself for medical examination was some other person. We can think of no logical reason why a person who had not made application for insurance would submit himself for examination. The issues which plaintiff seeks to separate are so interwoven and so closely related that we are of the opinion that proof of either is material in the establishment of the other.

What we have said thus far comes near to disposing of the first contested issue, adversely to the plaintiff. The reason for the effort made to limit the issue to that of substitution and thereby preclude the defendant from relying upon any finding except that of substitution is discernable from a reading of the authorities relied upon by the defendant to remove the bar erected by the incontestable clause.[3] By thus confining the issue, it is sought to escape the rationale of these authorities. We apprehend that plaintiff would concede that if Obartuch signed the application without knowledge of its contents, that is, had no

intention of applying for insurance, and that some person other than he was substituted for the medical examination, (facts found by the court) that such clause would no longer be effective.

In the Maslin case, the court held that the defense of impersonation was not barred by the incontestable clause on the theory that no contract was made with the named insured. True, as plaintiff points out, the named insured neither signed the application nor submitted to medical examination, but the matter of substitution was stressed by the court. On page 370, of 3 F.Supp., it said:

" * * * There cannot be the slightest doubt that the person whom an insurance company intends to make a contract with and intends to insure is the person who presents himself for physical examination.

* * * * * *

"The defendant's only contract was with the man who made the application and took the examination."

In the Ludwinska case, a similar situation is considered. The person named as the insured was an imbecile and the application for insurance was made by her sister who also impersonated the named insured at the medical examination. The court held that if anyone was insured it was the sister and not the one named in the policy. On pages 30 and 31 of 178 A., it is said:

" * * * The contract must be made by some one capable of contracting under the insurance law. Without this neither the incontestable clause contained in the policy nor the policy itself have any life. The clause can rise no higher than the policy; the incontestable clause cannot of itself create the contract.

* * * * * *

"Insurance companies do not insure names. They insure lives. * * * "

In the Logan case, which referred to a statute requiring the incontestable provision; the court, on page 292 of 51 S.W.2d, said: " * * * This statute certainly has reference to cases where there is a contract between the insured and the insurer. If the insured never made any application to the association for insurance, either by

3 Maslin v. Columbian Nat. Life Ins. Co., D.C., 3 F.Supp. 368; Ludwinska v. John Hancock Mutual Life Ins. Co., 317 Pa. 577, 178 A. 28, 98 A.L.R. 705; Logan v. Texas Mut. Life Ins. Ass'n., 121 Tex. 603, 51 S.W.2d 288; Petaccio v. New York Life Ins. Co., 125 Pa.Super. 15, 189 A. 697; Harris v. Travelers Ins. Co., 5 Cir., 80 F.2d 127.

making the application herself, or authorizing another to do so for her, then there never was a contract between the insured and the insurer and the statute above quoted could not have application at all. * * *"

In the Harris case, this court considered a situation where the policy was placed for inspection in the hands of the one who applied for the policy. In the meantime, the person died and the named beneficiary sought to recover. It was held that no contract existed and, that the incontestable clause did not bar a defense. On page 130 of 80 F.2d, it is said: "* * * The expressions of these courts, while not the whole basis of the decisions, tend to uphold our view that there is no effective incontestable clause when the policy is clearly shown never to have been accepted by the insured in his lifetime as a contract. * * *"

In Charbonnier v. Chicago Nat. Life Ins. Co., 266 Ill.App. 412, the court held that the incontestable clause did not bar a defense against a beneficiary with a non-insurable interest.[4] On page 421 of 266 Ill.App., a statement from Corpus Juris is quoted with approval, as follows: "* * * 'Such a policy' (i. e., one taken out by a person for his own benefit on the life of another in which he has no insurable interest) 'is void at its inception, and is not rendered valid by a clause declaring it incontestable after the lapse of a specified period of time.' * * *"

Cooley's Briefs on Insurance, 2d Ed., Vol. 8, supplementing vols. 1–7, page 610, states: "* * * A contract invalid as against a public policy or good morals cannot be validated by incontestability provision. Bernier v. Pacific Mut. Life Ins. Co. of California, 173 La. 1078, 139 So. 629, 88 A.L.R. 765; affirming Leidenger v. Pacific Mut. Life Ins. Co. of California, 18 La.App. 348, 135 So. 85."

Couch's Cyc. of Insurance Law, 1931 Ed., Vol. 8, page 6990, Sec. 2155f, states: "* * * Furthermore, the incontestable clause applies only to legitimate policies, and cannot be invoked by conspirators who have obtained a policy on the life of another by fraud. * * *"

■ It would serve no good purpose to review the many cases relied upon by the plaintiff where the courts have held, under a variety of circumstances, the incontestable clause to be a bar after the expiration of the time mentioned therein. Such cases are distinguishable on the ground that the contract was voidable, subject to be cancelled and not void as in the instant case. The purpose of such provision is to assure that after the expiration of the time fixed thereby, neither the insured nor his beneficiary will be subjected to a claim of fraud made by the insurer. Within that time, however, the insurer is given the opportunity to investigate, and if fraud is discerned, to take action to rescind the contract.

■ The clause itself, however, presupposes a valid contract and not one void ab initio—it cannot be used as a vehicle to sanctify that which never existed. The court found that Frank Obartuch was without knowledge as to the alleged contract of insurance and, that he had no intention of insuring his life and was not the person submitted for medical examination. Thus there was no meeting of the minds—a fundamental requisite of all contracts—the policies as issued were void and the incontestable clause without effect.

The question presented by plaintiff's second contested issue is predicated largely upon the alleged incompetent testimony of the defendant's medical examiner, Dr. Rubens. A consideration of this question requires a brief statement of the relevant facts. Dr. Rubens, over the objection of the plaintiff, was permitted to testify concerning a medical examination given to a person represented as Frank Obartuch at the latter's home on June 11, 1931; that he met defendant's agent, Friedman, who had procured the application, in front of the Obartuch home and, that Friedman took him into the house and introduced him to two men, one represented to be Frank Obartuch and the other, Obartuch's son.

The doctor's testimony, now material, was to the effect that the man he examined, represented as Frank Obartuch, did not sign any of the documents (parts of the application) in his presence; that after he had written the answers to the questions in the blank form used for medical examination, he left the same with the man examined and, that he next saw it the

[4] Other cases to the same effect: Gray v. North American Mutual Union, 249 Ill.App. 74, 83; Hawley v. Aetna Life Ins. Co., 291 Ill. 28, 30, 125 N.E. 707; Foreman v. Great United Ben. Ass'n., 302 Ill.App. 276, 281, 23 N.E.2d 813.

following day at the insurance office. The exhibit showing the medical examination is referred to as Part 2, and on the opposite side of the same paper is Part 3, the confidential report of the examiner for the company. Part 1, the application purportedly signed by Obartuch in the presence of defendant's agent, Friedman, and Part 2, are made a part of the contract for insurance, while Part 3 is not. The plaintiff objected to the testimony of the doctor on the ground that he had signed the certificate on Part 2, as follows: "I declare that I saw the applicant attach his signature to this application and answers to questions (all of which were written in ink) before he signed the same." Parts 1 and 2 were offered in evidence by the plaintiff as parts of the policy. For some reason not entirely apparent, Part 2 was also offered by the defendant and received in evidence as its Exhibit 5. It is admitted that Dr. Rubens was the agent of the defendant and, in conducting the examination, was acting in the scope of his authority. Plaintiff contends that the contradiction of these written documents by parol testimony is reversible error, while the defendant argues that the Parol Evidence Rule is not applicable where the defense is fraud, which renders the contract void ab initio, and hence no contract to be protected by the rule. Without undertaking a review of the numerous authorities cited in support of the respective contentions, we think it may be said there is none where the precise question here presented was considered, and certainly none which supports the plaintiff's theory. Plaintiff's authorities most nearly in point are those where the insurer was held to be precluded from disputing a recital in the policy acknowledging receipt of payment of premium.[5] It seems to us, however, that such authorities have little pertinency to the instant question for the reason that in such cases the validity of the contract was not in dispute. Here the attack is upon the alleged contract at its inception. If the defense of fraud is sustained, no contract was brought into existence.

There is no question but that the general rule precludes the introduction of parol testimony for the purpose of contradicting, changing or adding to the terms incorporated into and made a part of a written contract. 56 A.L.R. 13. The same authority, however, recognizes an exception to the rule in cases where a written contract is procured by fraud. On page 87 of the same volume, it is said: "* * * And where a life insurance policy is contested on the ground of fraud, parol testimony tending to show the circumstances, statements, and representations which led up to, and induced, the making of the instrument, is not inadmissible on the ground that it tends to vary the terms of the written application for insurance and the written medical examination signed by the insured. * * *"

Couch's Cyclopedia of Insurance Law, Vol. 2, Sec. 511, (page 1463) states: "* * * So, it has been said that an insurance company is bound by the act of its medical examiner in reporting an applicant to be a fit subject for insurance, unless he was purposely misled by the applicant, and inveigled into recommending the latter as a fit subject for insurance, when, but for such deception, he would not have done so. * * *"

In Illinois, it has been held that the Parol Evidence Rule does not apply where it is sought to impeach a written contract for fraud and, that parol evidence is admissible for such purpose. Grand T. & C. G. R. R. Co. v. Walton, 150 Ill. 428, 440, 37 N.E. 920; Hicks v. Stevens, 121 Ill. 186, 192, 11 N.E. 241, 242. In the latter case, it is said: "* * * Such statements were not admitted for the purpose of changing the terms of the written contract, but to show that its execution was procured through fraudulent misrepresentations on the part of the vendor, and for that purpose it was certainly proper [to admit them]."

In El Dia Ins. Co. v. Sinclair, 2 Cir., 228 F. 833, the court, in considering the Parol Evidence Rule in connection with an insurance policy, on page 839 of 228 F., said: "The rule that the written contract, in this case the policy, cannot be contradicted by extrinsic evidence, is subject to certain exceptions as well recognized as the rule itself. As fraud vitiates whatever it touches, extrinsic evidence is, of course, always admissible to show, for the purpose of invalidating a written instrument, that its existence was procured by fraud, or that by reason of fraud it does not express the true intention of the parties."

---

[5] Typical of such cases are Provident Life Insurance Company v. Fennell, 49 Ill. 180, and Massachusetts Life Association the Sibley, 158 Ill. 411, 42 N.E. 137.

In a case such as the instant one, where the defense of fraud is invoked, in that the named insured never knowingly made application for insurance and where a person other than the named insured was substituted for the medical examination, we are of the opinion that the Parol Evidence Rule can not be invoked to preclude the medical examiner from giving testimony as to the facts and circumstances connected with and surrounding the parties at the time of such examination. The purpose of such testimony is not to vary or contradict a contract, but to show that the alleged contract never came into existence. What we have said concerning the testimony of the medical examiner is also applicable to the testimony of defendant's agent, Friedman, who had signed as a witness to the signature of Frank Obartuch on certain papers in connection with the application.

The findings and conclusions complained of, however, find ample support in the testimony other than that given by the medical examiner. Without going into detail concerning such testimony, it is sufficient to state that we have studied it and think it strongly supports the conclusion that Frank Obartuch never intended to make application for the insurance in question and had no knowledge of the issuance of such policies. Statements made by him, as well as his acts and conduct, are entirely inconsistent with a contrary conclusion.

We are of the opinion that the record furnishes ample support to the findings as made by the court below and that the law was properly applied thereto. The judgment is affirmed.

### On Petition for Rehearing.

The questions involved in this case have called for more than the usual amount of study and thought. On petition for rehearing, at the suggestion of the court, a second oral argument was had. This argument, as well as the briefs submitted by able counsel on both sides, has been given our careful consideration.

We have reached the conclusion that the only question which requires further discussion is that with reference to the admissibility of the testimony of Dr. Rubens. In addition to what we have said in the opinion concerning this testimony, it is pertinent to point out that there was present at the home where, and at the time, the examination in question was made, a number of the relatives of Frank Obartuch, including his wife (beneficiary named in the policies). It is also material to note that the doctor testified in detail, without objection, as to a description of the person examined. He also testified, without objection, that a photograph identified as that of Frank Obartuch was not that of the person examined by him.

He testified that the application was left with the person representing himself to be Frank Obartuch, and that he next saw the application on the following day at the office of the defendant company. For some reason not apparent, it appears that counsel for neither side was interested in ascertaining why the application was left with the person examined, or by whom it was presented to the doctor on the following day. The record is silent in this respect.

It is also pertinent to point out that neither side charges the doctor with fraud. In fact, plaintiff emphasizes the argument that no such charge is directed at the doctor. Under such circumstances, it must be assumed, we think, that the doctor acted in good faith.

Plaintiff, in attempting to escape the exception to the parol evidence rule, argues that no force or coercion was used which caused the doctor to leave the application with the man examined, or to sign the certificate on the following day. It is said that these acts on the part of the doctor were free and voluntary, and, therefore, no fraud was perpetrated upon him. With this argument we do not agree. Neither force nor coercion is essential in order to commit fraud. In fact, it is rarely committed in such a manner. It is usually the result of some character of deception or misrepresentation. Nor does the fact that his acts were free and voluntary, dispel fraud. They are consistent with it. While the record is silent as to what representations, if any, were made to the doctor before he signed the certificate, or by whom, we think it is a reasonable inference—in fact, irresistible—that someone interested in procuring the insurance delivered the applications to the defendant's office. It would seem almost as certain that the doctor certified to the signature of Frank Obartuch on account of the representation by some person, implied, if not expressed, that such signature was that of the same person examined by him the day before. Assuming that he was not a party to the conspiracy, then it must be concluded that he made the certificate as the result of a de-

ception and misrepresentation practiced upon him. That this was a fraud, we think there can be no doubt, and this, irrespective of whether the doctor was careless or negligent in certifying to the signature. A victim of fraud could ordinarily escape its consequences by the exercise of a proper degree of care.

Even if the doctor were a party to the conspiracy, it would not help the plaintiff's side of the argument, as in that case he would be acting beyond the scope of his authority, and his principal would not be bound by his acts. Mutual Life Insurance Co. v. Hilton-Green, 241 U.S. 613.

Plaintiff places great stress upon the cases of New York Life Insurance Co. v. Stewart, 69 F.2d 957, and Metropolitan Life Insurance Co. v. Alterovitz, 214 Ind. 186. In fact, these cases are relied upon almost exclusively as authority for plaintiff's contention that the doctor's testimony is not an exception to the parol evidence rule. We think, however, they are clearly distinguishable. True, in both cases it was held that the agent of the insurance company could not give oral testimony on behalf of the plaintiff that the answers written in the application were, in reality, the answers of the agent rather than those of the applicant. It is argued by plaintiff that if an agent cannot testify on behalf of the plaintiff, he is likewise precluded from testifying on behalf of the defendant. This argument, however, overlooks the fact that the testimony in the cited cases was held inadmissible upon the grounds of estoppel. In each case the policy was delivered to the insured and remained in his possession until his death. In the Stewart case, it is said on page 958: "* * * The insured could not hold the policy delivered to him without becoming chargeable with knowledge of its contents, including the application, which was attached to the policy and expressly made a part of it. By accepting and retaining possession of the policy without objection, the insured adopted as his own the answers to questions contained in the attached application, whether those answers were or were not made, as they were stated to have been, by the insured prior to his signing that application. * * *"

In the Alterovitz case, the court, on page 203, said: "In the instant case the insured Alterovitz held the policy and application for more than eight months before he died; he was chargeable with their contents and must be held to have adopted as his own the answers contained in the application attached to the policy."

It is not difficult to see why plaintiffs' insured in those cases, who had knowledge of the false answers at the time they were written in the application by the agent, or could have acquired such knowledge by reading the policies after they were delivered, should subsequently be estopped from disputing such answers. It is another matter entirely, however, to apply this doctrine to the defendant in the instant case. Surely the doctrine of estoppel cannot preclude the defendant from asserting a fact of which it had no previous knowledge unless such knowledge can be imputed as a matter of law. Assuming that the doctor acted in good faith, as agreed, he had no actual knowledge of the fraud. Without such knowledge on the part of the agent, there was nothing to impute to the principal. Even if the doctor had knowledge of the fraud, it was not imputable to the insurer. In Mutual Life Insurance Co. v. Hilton-Green, 241 U.S. 613, the court considered a situation similar to the instant one. After recognizing the general rule which imputes an agent's knowledge to the principal, the court recognized an exception which, we think, must be applied here. On page 622, the court said: "* * * But this general rule does not apply when the third party knows there is no foundation for the ordinary presumption—when he is acquainted with circumstances plainly indicating that the agent will not advise his principal. * * *"

It must be remembered in this connection that the policies in suit, from the time of their issuance, were in the possession of those now seeking to recover. The plaintiff (beneficiary) was actually present at the time of the examination when the substitution was made. In this connection, it is argued by the plaintiff that the defendant is seeking to take advantage of its own wrong. We do not agree with this contention. We think it is the plaintiff who is seeking an advantage of the fraud and if the insurer is precluded from showing the circumstances by which the policies were procured, the plaintiff will succeed. The fact that the doctor's testimony is inconsistent with the certificate made in connection with the examination is immaterial. Such inconsistency goes to the weight or credibility of his testimony rather than to its admissibility. It thus appears to us that his certification was obtained by fraudu-

882

lent means, and that under the authorities cited in the opinion, the doctor was a competent witness.

█ It is also pertinent to point out that the testimony on behalf of the defendant disclosed that the description of Frank Obartuch varied greatly from the description of the man examined as shown by the doctor's report of examination. Also, that the doctor testified, without objection, that a photograph shown to have been that of Frank Obartuch was not that of the person examined. There were many circumstances which corroborated the doctor in this respect. True, much of such testimony was disputed, but the weight and credit to be given it was a matter for the District Court.

A re-study of the record confirms our conclusion that the evidence supports the findings as made by the District Court, and that the findings support the judgment. The petition for rehearing is denied. It follows that the judgment was properly affirmed.

TREANOR, Circuit Judge (dissenting).

I believe that the petition for rehearing should be granted and judgment of the District Court reversed.